THE STATE OF OHIO, APPELLEE, *v.* PARKS, APPELLANT.

(No. CA 7254—Decided April 14, 1982.)

*Mr. Lee C. Falke,* prosecuting attorney, and *Mr. Ted E. Millspaugh,* for appellee.

*Mr. Gary J. Leppla,* for appellant.

SHERER, J. Appellant, Walter R. Parks, was convicted and sentenced for the crime of complicity to commit arson in violation of R.C. 2923.03(A)(1) and 2909.03(A)(4) and for the crime of grand theft by deception in violation of R.C. 2913.02(A)(3).

R.C. 2909.03(A)(4) provides:

"(A) No person, by means of fire or explosion, shall knowingly:

"* * *

"(4) Cause, or create a substantial risk of, physical harm, through the offer or the acceptance of an agreement for hire or other consideration, to any property of another without his consent or to any property of himself or another with purpose to defraud."

R.C. 2923.03(A)(1) provides:

"(A) No person, acting with the kind of culpability required for the commission of an offense, shall do any of the following:

"(1) Solicit or procure another to commit the offense;"

R.C. 2923.03(D) provides that no person shall be convicted of complicity under this section solely upon the testimony of an accomplice, unsupported by other evidence.

R.C. 2913.02 (A)(3), relating to theft, provides:

"(A) No person, with purpose to deprive the owner of property or services, shall knowingly obtain or exert control over either:

"* * *

"(3) By deception;"

The gist of the state's case is that Parks hired one Hickle to burn his residence property at 138 South June Street in Dayton with intent to defraud Progressive Casualty Insurance Company of its property, checks having a value of $150 or more.

The first error assigned is that the trial court erred in failing to direct a verdict as a result of the uncorroborated nature of the testimony of the accomplice. Appellant moved to dismiss at the close of the state's case for the reason that Hickle's testimony was uncorroborated. But for the need for corroboration of Hickle's testimony, his testimony and other evidence were sufficient to prove appellant guilty as charged.

In *State* v. *Pearson* (1980), 62 Ohio St. 2d 291 [16 O.O.3d 332], the Supreme Court held in the syllabus:

"1. R.C. 2923.03(D) can prohibit convictions for principal offenses, as well as prohibit convictions for the complicity offenses described in R.C. 2923.03(A).

"2. In order for the prosecution to satisfy the corroboration requirement of R.C. 2923.03(D), independent evidence must support an accomplice's testimony, and must tend to connect the accused with the alleged crime or must tend to identify the accused as a guilty actor. (*State* v. *Myers*, 53 Ohio St. 2d 74 [7 O.O.3d 150], approved and followed.)"

The state contends that there was such independent evidence to support the testimony of Hickle tending to connect appellant with the crimes charged and to identify the accused as a guilty actor as follows:

John Moore, an investigator with the Arson Abatement Unit of the Dayton Fire Department, testified that he did the follow-up investigation on the fire at 138 South June Street and that after talking with Hickle, the latter was fitted with a body mike and transmitter and was sent to appellant's residence to engage him in a conversation regarding that fire. Moore testified that he heard and monitored that conversation involving Hickle and that during that conversation which was taped, the person Hickle was talking to was referred to by Hickle as "Walt" or "Walter." Moore testified further that a tape recording of that conservation, which was played for the jury without objection, was a fair, accurate recording of what he heard when he sent Hickle to appellant's home. In that conversation, Moore heard Hickle ask the man he referred to as "Walt" or "Walter" what

happened to the house he had burned for him; that "Walt" or "Walter" said, "Oh, they tore it down." Moore testified that he heard Hickle ask "Walt" or "Walter" how he came out on the insurance deal and that he heard "Walt" or "Walter" say, "Oh, yeah." Moore testified he heard Hickle say, "I think you said you got nine thousand or something, wasn't it" and that he heard "Walt" or "Walter" answer, "Yeah, and this, I bought this and it's all paid for and don't owe a fucking thing on it."

As a part of the state's case, one Richard Shay testified that he adjusted a fire claim for Walter and Sheila Parks involving their property on South June Street; that he delivered an insurance check payable to them and a mortgage company in the amount of $9000 and a second check to them for $845 for damage to contents. He testified that he received a written claim from them signed by Walter Parks indicating that the fire was caused by defective wiring in the burned house. He stated that such checks would not be issued if the owners are involved in causing the fire.

We conclude that the evidence adduced by the state in its case in chief is such as to constitute independent evidence in corroboration of Hickle's testimony so as to satisfy the corroboration requirement of R.C. 2923.03(D) and the holding of the Supreme Court in the *Pearson* case.

After the state rested and after the trial court overruled appellant's motion to dismiss for failure of the state to corroborate Hickle's testimony, appellant testified in his own behalf. He stated that he saw Hickle before the fire. He admitted that Hickle came to his house and that he stated he had burned the house at 138 South June Street. He stated that Hickle asked him if he knew of any houses to burn down. He stated that he went along with Hickle and told him there was a man somewhere on the block but that he couldn't remember. He stated that he

didn't know what Hickle was talking about. On cross-examination, he admitted that the voices on the tape recording of his conservation with Hickle played in court were his and Hickle's. He admitted having several conversations with Hickle before the fire. He admitted that the taped recording of his conversation with Hickle occurred after the fire. He admitted that Hickle mentioned the $9000 figure when talking about the fire, but that he thought Hickle was talking about a truck. He admitted that when Hickle asked him if he knew of any houses to burn down and that he might have said to him, "and if I hear of anything, you just keep in touch with me."

The state argues that when appellant testified in his defense after the trial court had overruled his motion to dismiss at the close of the state's case, he waived his right to claim error in overruling such motion, citing *Halkias* v. *Wilkoff* (1943), 141 Ohio St. 139 [25 O.O. 257], which holds in the syllabus:

"(2) When a motion of a defendant for a directed verdict is made at the conclusion of plaintiff's evidence and overruled, the defendant has an election either to stand on his exception to the ruling or to proceed with his defense; and if he accepts the ruling, however erroneous it may be, and proceeds with his defense, introducing evidence on his own behalf, he thereby waives his right to rely on the denial of his original motion.

"(3) The renewal of defendant's motion to direct a verdict at the close of all the evidence challenges, not the sufficiency of the evidence that was alone before the court and jury at the time the original motion was made, but the evidence and the state of the record as it exists at the conclusion of all the evidence."

This court has held the rule announced by the Supreme Court in *Halkias* to be applicable in criminal cases in *State* v. *Moore* (Nov. 14, 1980), Miami App. No. 80 CA 30, unreported. The Cuyahoga County Court of Appeals has applied the

rule in *Halkias* to criminal cases in *State* v. *Kiraly* (1977), 56 Ohio App. 2d 37 [10 O.O.3d 53], and in *State* v. *Larry* (1975), 44 Ohio App. 2d 92 [73 O.O.2d 73].

We apply that rule in the case before us and hold that appellant waived his right to rely upon any possible error of the trial court in overruling his motion to dismiss at the close of the state's case. We further hold that the motion of appellant to dismiss at the close of all the evidence was properly overruled because appellant's testimony in his own behalf furnished independent evidence to support the testimony of Hickle to connect appellant with the crime charged and to identify appellant as a guilty actor. We conclude further that the evidence in the record at the close of all the evidence is sufficient to prove appellant guilty of the crimes charged beyond a reasonable doubt.

The second error assigned is that the trial court erred in failing to direct a verdict due to the lack of evidence of intent to defraud or steal.

This assignment refers to appellant's conviction of the crime of grand theft by deception in violation of R.C. 2913.02 (A)(3).

The evidence on this point is conflicting. The evidence adduced, if believed, is sufficient to show beyond a reasonable doubt that appellant agreed to pay Hickle $150 to burn down his home and that he indicated to Hickle that he wanted it burned in order to collect $9000 in insurance proceeds; that Hickle burned the house down and was paid $100 by appellant for his efforts; that appellant later received two checks from Progressive Casualty Insurance Company, one for over $9000 payable to both appellant and the mortgage company and one for $845 payable to appellant alone, as a result of his claim for insurance following the fire.

Based upon the evidence adduced, the jury could reasonably conclude beyond a reasonable doubt that appellant intended to defraud the insurance company.

The record contains competent credible evidence which, if believed, is sufficient to prove beyond a reasonable doubt all the essential elements of the crime charged, including a purpose to defraud. *State* v. *Eley* (1978), 56 Ohio St. 2d 169 [10 O.O.3d 340]. There is no merit in appellant's second assignment of error.

The third assignment of error is that the trial court erred by allowing the jury to consider two allied offenses of similar import over appellant's objection.

R.C. 2941.25, the multiple count statute, provides:

"(A) When the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant can be convicted of only one.

"(B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them."

The General Assembly has authorized trial courts, in a single criminal proceeding, to convict and to sentence a defendant for two or more offenses, having as their genesis the same criminal conduct or transaction, provided that the offenses (1) were not allied and of similar import, (2) were committed separately, or (3) were committed with a separate animus as to each offense.

In *State* v. *Rice* (1982), 69 Ohio St. 2d 422, 424 [23 O.O.3d 374], the court stated that:

"Under R.C. 2941.25, if the conduct of the defendant here may be construed to constitute allied offenses of similar import, and the offenses are found not to have been committed separately or with a separate animus as to each, the defendant

may be convicted of only one of the offenses."

In *State* v. *Logan* (1979), 60 Ohio St. 2d 126, 131 [14 O.O.3d 373], the court stated:

"It is apparent that the statute has attempted to codify the judicial doctrine — sometimes referred to as the doctrine of merger, and other times as the doctrine of the divisibility of offenses — which holds that 'a major crime often includes as inherent therein the component elements of other crimes and that these component elements, in legal effect, are merged in the major crime.' "

In *Logan,* the court set forth the test for determining whether multiple offenses are allied offenses of similar import, stating at 128, that:

"In essence * * * [*State* v. *Donald* (1979), 57 Ohio St. 2d 73 (11 O.O.3d 242)] established that in order for two crimes to constitute allied offenses of similar import, there must be a recognized similarity between the elements of the crime committed. The offenses and their elements must correspond to such a degree that commission of the one offense will result in the commission of the other."

In *State* v. *Rice, supra,* the court construed the application of R.C. 2941.25 to the offenses of carrying a concealed weapon and having a weapon while under disability. At 425, the court said:

"A close inspection of these two statutes reveals that there are indeed a number of similar elements. However, all of the elements requiring proof prior to a finding of violation thereof are not the same, one to the other. For example, a person with no prior record may violate the concealed weapon statute but could not lawfully be charged with having a weapon while under disability. Contrarily, a person under such disability may 'acquire, have or use' a firearm or dangerous ordnance without carrying it with him in a concealed fashion."

At 426, the court said:

"Therefore, the elements of proof of these two crimes indicate that they do not correspond to such a degree that commission of the one offense will result in the commission of the other."

The court then held that the two offenses were not allied offenses of similar import.

The *elements* of grand theft in violation of R.C. 2913.02 (A)(3) are (1) purpose to deprive the owner of property, (2) knowingly obtain or exert control over property of another, and (3) by deception.

The *elements* of R.C. 2909.03 (A)(4) are (1) causing by fire, (2) physical harm to the property of another or to property of himself, (3) through the offer or acceptance of an agreement, and (4) with intent to defraud.

The *elements* of R.C. 2923.03 (A)(1) are (1) acting with the culpability required for the commission of an offense, and (2) solicit or procure another to commit the offense.

The *elements* of the crime of grand theft could be proved without proving complicity to commit arson. Contrarily, the *elements* of the crime of complicity to commit the crime of arson, through an agreement with another to burn the other's property with intent to defraud, could be proved without proving grand theft, knowingly *obtaining* or *exerting control* over the property of another.

Thus, the two offenses are not of similar import. Even if they were, they were committed separately so as to deprive appellant of the protection of the statute because of Subsection (B) thereof. We see no merit in appellant's third assignment of error.

Finding no error in the proceedings of the trial court, the judgment will be affirmed.

*Judgment affirmed.*

KERNS, P.J., and WILSON, J., concur.

SHERER, J., retired, of the Second Appellate District, was assigned to active duty under authority of Section 6 (C), Article IV, Constitution.