## State v. Parks
*[Cite as 4 AOA 71]*

*Case No. 11938*
*Montgomery County (2nd)*
*Decided June 21, 1990*

*John F. Blake, Prosecuting Attorney for City of Kettering, 3600 Shroyer Road, Kettering, Ohio 45429, for Plaintiff-Appellee.*

*Don A. Little, 333 West First Street, Suite 470, Dayton, Ohio 45402, for Defendant-Appellant.*

FAIN, J.

Defendant-appellant William Thomas Parks appeals from his conviction and sentence for Disorderly Conduct. Parks contends that the evidence against him was insufficient to establish the elements of the offense charged, and we agree. Consequently, the judgment of the trial court will be reversed, and Parks will be ordered discharged.

### I

Law enforcement officers from several different jurisdictions were involved in a high-speed chase of a red Corvette in Clearcreek Township, in Warren County, Ohio, in the early morning hours of August 13, 1989. Two officers from the Montgomery County Sheriff's office, who were aware of the high-speed chase, found a red Corvette, evidently the subject of the chase, parked in a driveway off State Route 48, just north of the boundary between Montgomery County and Warren County. Parks was sitting in the passenger's seat, and a companion was sitting in the driver's seat.

Officers went to each door, and Parks and the driver were both ordered out of the vehicle.

The officer who ordered Parks out of the car testified as follows:

"A. Uh, at .. once we got into position, uh, the driver was ordered out of the vehicle by Clearcreek Township police officers. The driver refused to comply with that order. At this point in time, myself and Corporal Mommsen ordered the passenger out of the passenger side of the vehicle. We did this approximately three to four times. The passenger did not comply with that order.

"Q. Is he the Defendant in this case?
"A. Yes.
"Q. Alright, and uh, at .. did you have to make him get out of the vehicle?

"A. Yes, I had opened the door prior to ordering him out of the vehicle. After the refusal for the fourth, third or fourth time, uh, I grabbed his right shoulder area and assisted him out of the vehicle. Once outside the vehicle, he was ordered three times to uh, lay down on the ground spread eagle uh, to facilitate a search, a patdown, of him

uh, for the safety of myself and other officers there.

"Q. Did you notice anything peculiar about him at this instance?

"A. Yeah, he extreme .. appeared extremely incoherent inside the vehicle, really strong odor or alcoholic beverage about his person. He had red bloodshot eyes, and he appeared very intoxicated.

"Q. Alright, and his failure to exit the vehicle on your request, was that because in your opinion, he could not or would not.

"A. I'm not sure if it was ... which one of those it would have been.

"Q. Did you assist him out of the vehicle?

"A. Yes, we did.

"Q. Alright, and then did you affect [sic] the patdown?

"A. Yes, we did, we had to physically with a .. using a minimum amount of force take him physically to the ground uh, for the patdown."

Parks was arrested and charge with Disorderly Conduct Following a bench trial, he was convicted and sentenced accordingly. From his conviction and sentence, Parks appeals.

II

Parks assigns the following Errors:

"FIRST ASSIGNMENT OF ERROR
THE TRIAL COURT ERRED IN OVERRULING DEFENDANT-APPELLANT'S RULE 29 MOTION FOR ACQUITTAL AT THE CONCLUSION OF THE STATE'S CASE.

"SECOND ASSIGNMENT OF ERROR
THE EVIDENCE IS INSUFFICIENT TO SUSTAIN A CONVICTION FOR DISORDERLY CONDUCT IN VIOLATION OF SECTION 2917.11(b)(2), REVISED CODE.

"THIRD ASSIGNMENT OF ERROR
THE JUDGMENT OF THE TRIAL COURT IS AGAINST THE WEIGHT OF THE EVIDENCE."

Because we conclude that the evidence in this case was insufficient to sustain the conviction, we will consider all three Assignments of Error together.

A

First, however, we must address the State's argument that Parks has waived his First Assignment of Error. The State argues that by introducing evidence following his motion for a judgment of acquittal, Parks waived any error by the trial court in failing to grant the motion.

Although the State has cited two decisions by other Ohio courts of appeals, it could have cited *State v. Parks* (1982), 7 Ohio App. 3d 276, a decision of this court, in support of that proposition.

In *State v. Parks, supra*, we relied upon *Halkias v. Wilkoff* (1943), 141 Ohio St. 139, in which it was held that a civil defendant waives any claim of error in the denial of his motion for a directed verdict at the close of the plaintiff's evidence, when he proceeds with his defense. This holding has been overruled in *Helmick v. Republic-Franklin Ins. Co.* (1988), 39 Ohio St. 3d 71, first paragraph of syllabus. In *Helmic*, it was held that a civil defendant does not waive his right to a directed verdict, at the close of the plaintiff's evidence, by proceeding with the defendant's own evidence, so long as the defendant renews his motion for a directed verdict at the close of his own evidence. Because the authority upon which *State v. Parks, supra*, expressly relied has been overruled, and because we can see no reason not to accord a criminal defendant the same right that is extended to a civil defendant to present evidence in his own defense without waiving his right to judgment in his favor, based upon a motion made at the close of his adversary's evidence, we hereby overrule *State v. Parks, supra*. A criminal defendant may present evidence in his defense without waiving his right to claim that the trial court erred by denying his motion for a judgment of acquittal made at the close of the State's evidence.

B

Parks was charged with violating R.C. 2917.11(B)(2), which provides as follows:

"No person, while voluntarily intoxicated, shall do either of the following:

"* * *

"(2) Engage in conduct or create a condition which presents a risk of physical harm to himself or another, or to the property of another."

The State's evidence in the case before us, while sufficient to support an inference that Parks was intoxicated, merely established that he was sitting peaceably in the passenger seat of a car that was parked in a driveway. To be sure, the police officers had a legitimate interest in this car, since it was evidently the same car that had recently been involved in a highspeed chase. The fact remains, however, that Parks was simply sitting peaceably in the passenger seat of that car when he was told, by a police officer, to get out of the car.

The Ohio Supreme Court has held that a police officer's statement "Hey, come here a minute," while nominally couched in the form of a demand, is actually a request that a citizen is free to regard or to disregard. *State v. Smith* (1989), 45 Ohio St. 3d 255, 259, reversed *sub nom Smith v. Ohio* (1990),___ U.S. ___.

When Parks ignored the police officer's request the third or fourth time, Parks was "assisted" out of the car, the ultimate result being his lying spread-eagle on the ground, under the physical control of the officer. The State argues that Parks' refusal to accede to the police officer's request was conduct, or created a condition, which presented a risk of physical harm to Parks because Parks might have been injured when he was "assisted" out of the car by the officer. We reject this argument as "boot-strapping." The State argues too much when it argues that an intoxicated person in public exposes himself to the risk that he will be harmed when he fails to comply with a police officer's request. The same argument could be made with respect to any person who is voluntarily intoxicated in public, and yet it is clear that the current version of the Disorderly Conduct statute is not intended to reach all persons who are voluntarily intoxicated in public.

The Committee Comment to R.C. 2917.11(B)(2) says, in pertinent part:

"Former law merely prohibited being found in a state of intoxication, whereas this section is aimed at particular conduct rather than at the condition. Thus, it is not a violation of this section for a person to get drunk and pass out in his own home, provided he doesn't unreasonably offend others or pose a danger to himself of another person. It is a violation if he imbibes too much, and, while in public or with others, becomes offensively noisy, coarse, or aggressive, or becomes uncontrollably nauseated between the entree and dessert. It is also a violation if, when alone and drunk or under the influence of drugs, he attempts a tightrope act on a bridge parapet or curls up to sleep in a doorway in freezing "weather."

In our view, the facts in the case before us are much closer to the facts in *Loraine v. Wright* (1983), 11 Ohio App. 3d 200, than they are to performing "a tightrope act on a bridge parapet" or to curling "up to sleep in a doorway in freezing weather."

In *Lorain v. Wright, supra*, the defendant was found alone, asleep, in an inoperable car. The court declined to find that the defendant's act of sleeping in his car created a risk of physical harm to him.

Similarly, we are not disposed to find that Parks' act of sitting in the passenger seat of a parked car, albeit in an intoxicated state, created the kind of risk of physical harm to himself that is intended to be encompassed by R.C. 2917.11(B)(2).

The State argues that Parks exposed himself to an unacceptable risk of physical harm by being intoxicated in an area where, once law enforcement officers had arrested the driver and towed the vehicle in which Parks was a passenger, Parks would be left "to wander about rural Montgomery County in the early morning hours." We conclude that this is not the kind of foreseeable consequence envisioned by the statute. A contrary conclusion would hold that anyone who, while intoxicated, becomes a passenger in a car, has thereby exposed himself to an unacceptable risk of physical harm in the event that the driver of the car may commit an offense and be arrested, with the car then being towed by the police. We conclude that the statute should be construed more narrowly, as suggested by the Committee Comment.

In our view, the State's evidence, even when viewed in a light most favorable to the State, is not sufficient to make out a violation of R.C. 2914.11(B)(2). Accordingly, Parks' First, Second. and Third Assignments of Error are sustained.

### III

Parks' First, Second, and Third Assignments of Error having been sustained, the judgment of the trial court will be Reversed, and Parks will be ordered discharged.

*Judgment reversed.*

BROGAN and GRADY, JJ., concur.