[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] OPINION
Bedford Combs was found guilty after a bench trial of domestic violence, in violation of R.C. 2919.25(A). Combs was fined $500, all of which was suspended, and sentenced to six months incarceration, all but thirty days of which was suspended. Imposition of the remaining thirty days incarceration has been stayed pending appeal.
At the close of the State's case, Combs moved for judgment of acquittal, which was denied. On appeal, he asserts as his sole assignment of error that "the State failed to prove Defendant was a cohabitant" as set forth in R.C. 2919.25(E)(2). Although imprecise, we interpret the assignment to contend that the State failed to prove that the alleged victim, Lisa Black, was a "family or household member."
The pertinent provisions of R.C. 2919.25 provide:
 (A) No person shall knowingly cause or attempt to cause physical harm to a family or household member.
* * *
 (E) As used in this section and sections 2919.251
[2919.25.1] and 2919.26 of the Revised Code:
 (1) "Family or household member" means any of the following:
 (a) Any of the following who is residing or has resided with the offender:
 (i) A spouse, a person living as a spouse, or a former spouse of the offender;
* * *
 (2) "Person living as a spouse" means a person who is living or has lived with the offender in a common law marital relationship, who otherwise is cohabiting with the offender, or who otherwise has cohabited with the offender within one year prior to the date of the alleged commission of the act in question. (Emphasis ours.)
Because Combs moved for judgment of acquittal before presenting his own evidence, we will evaluate this assignment on the basis of the State's evidence that was presented during its case-in-chief. See State v. Parks (1990), 56 Ohio App.3d 8.
It is clear that the relationship between Combs and Black that the State was required to prove was that of cohabitation.
The supreme court discussed cohabitation within the context of R.C. 2919.25 in State v. Williams (1997), 79 Ohio St.3d 459:
 1. The offense of domestic violence, as expressed in R.C. 2919.25(E)(1)(a) and related statutes, arises out of the relationship of the parties rather than their exact living circumstances.
 2. The essential elements of "cohabitation" are (1) sharing of familial or financial responsibilities and (2) consortium. (R.C. 2919.25[E][2] and related statutes, construed.)
* * *
 . . . we conclude that the essential elements of "cohabitation" are (1) sharing of familial or financial responsibilities and (2) consortium. R.C. 2919.25(E)(2) and related statutes. Possible factors establishing shared familial or financial responsibilities might include provisions for shelter, food, clothing, utilities, and/or commingled assets. Factors that might establish consortium include mutual respect, fidelity, affection, society, cooperation, solace, comfort, aid of each other, friendship, and conjugal relations. These factors are unique to each case and how much weight, if any, to give to each of these factors must be decided on a case-by-case basis by the trier of the fact.
The State's evidence bearing on the element of cohabitation was as follows. The alleged incident of domestic violence occurred during the early evening of June 9, 1997, at Black's apartment. A neighbor called the police because of a commotion in Black's apartment. Officer Sharon Rhoades, who was first on the scene, testified to entering the apartment and observing Black with a bloody mouth and swollen nose. She testified that Black denied there was anyone else in the apartment although Combs answered from the bedroom when a fellow officer on the scene, David Steinbrunner, called out to see if anyone else was present. Officer Rhoades also testified without objection:
 Q. Okay. Had you been called out to this residence on domestics prior to this date?
 A. I believe I've been out there at least twice before.
 Q. And do you have knowledge as to whether Bedford Combs and Lisa Black live together?
 A. To the best of my knowledge, yes, they've been living together for quite a while.
Q. In that apartment you just testified to?
A. Yes, ma'am.
Officer Steinbrunner testified that he entered the bedroom and found Combs lying in the bed. Combs stated he had been sleeping, and that the police had awakened him.
Black, who was a reluctant witness, testified that Combs "was my boyfriend and come over and see me" but he lived with his mother. She stated that she had been drinking on the evening in question and had injured herself about six p.m. "and had planned on starting supper and didn't." She stated that when the police arrived a few hours later, Combs "was in the back asleep." Prior to the arrival of the police, she had awakened Combs.
 A. Yeah, so it'd be about 9:00, around 9:00 maybe when I woke Butch up.
Q. And why did you wake him up?
 A. Drunk, playing loud music. It's, it's a wonder I didn't get in there and try to start supper. I've done that, too.
 Q. Okay. So now he woke up because of loud music, not because of your falling?
 A. I'm, I was drunk and I woke him up and all he did was want to go to sleep. He wanted to go back to sleep. It was a work night.
Black testified in part as follows in response to questioning from the trial judge:
 JUDGE: Do you remember telling the officers that Mr. Combs wasn't there when they first came in?
MS. BLACK: I think I do, but that's . . .
* * *
JUDGE: Why did you tell them that he wasn't there?
 MS. BLACK: Because the police have been to my address before for our drinking and, and yelling back and forth at each other and loud music and, and . . .
* * *
 JUDGE: My question to you is if you fell and hit your mouth on the table as you indicated why would you in . . . why would you fabricate Bedford Combs was not present, why would you lie about that?
 MS. BLACK: Because he isn't supposed to be in the apartment where I rent with residential housing. I've had tenants send complaints to the landlord and it's because of, of the drinking and, and, and all of that that goes along with it and stuff and, and I didn't want to lose my apartment, I'm on probation and that caught up with me, too.
Applying Williams to the evidence presented during the State's case-in-chief, we believe that the trial court reasonably — albeit implicitly — concluded that Black cohabited with Combs. We do not understand Williams to require evidence of all of the factors that are mentioned in the opinion as bearing on cohabitation.
The evidence demonstrated that Black shared her home with Combs on a frequent if not a constant basis, cooking for Combs and allowing him to sleep in her bedroom and spend the night. Black described Combs as her boyfriend, and it is readily inferable from the evidence that some of the consortium factors identified inWilliams — society, aid of each other, and conjugal relations — existed in this relationship.
Because the evidence tended to establish that Combs and Black did cohabit, the motion for acquittal was properly overruled.
The judgment will be affirmed.
FAIN, J. and GRADY, J., concur.
Copies mailed to:
Joe Cloud
Jack Harrison
Hon. Richard J. Bannister