OPINION
Appellant Jared [Jarod in case caption] Lipford appeals from his delinquency adjudication which was entered in the Carroll County Common Pleas Court, Juvenile Division. Appellant claims that the adjudication is against the manifest weight of the evidence due to allegedly uncorroborated accomplice testimony and other reasons. He also alleges that the adjudication is not supported by sufficient evidence because the state failed to have its main witness, appellant's alleged accomplice, point out from the stand that appellant was the person with whom he burglarized a residence. For the foregoing reasons, the delinquency adjudication is reversed.
 STATEMENT OF THE CASE
On November 1, 2000, Carrollton resident Bonnie Shaw arrived home from work around 5:30 p.m. Her husband arrived home shortly thereafter. Neither entered their bedroom. They ate dinner and left at 7:30 p.m. for a birthday party. When they arrived home at 9:30 p.m., they discovered that someone went through their bedroom drawers and stole various items, such as jewelry and money. They then noticed that the garage window was open and the sliding glass door was unlocked. Later, they realized a .22 rifle was missing. They assumed that the burglary occurred while they were at the party but later stated that it could have happened earlier in the day while they were at work.
During the course of the investigation, a lieutenant from the Carroll County Sheriff's Department interviewed fourteen year old Leroy Coleman who initially denied involvement. (Tr. 27). The lieutenant also spoke to Casey Coleman, who is Leroy's cousin and appellant's eighteen year old girlfriend. At that time, she was wearing Mrs. Shaw's stolen bracelet, which the lieutenant recovered. (Tr. 28). When the lieutenant later arrived at the Lipford residence to interview fifteen year old appellant, Casey Coleman was there and wanted to change her story. (Tr. 31-32). (The contents of either oral statement by Casey Coleman are unknown as she was not called to testify). Thereafter, Leroy Coleman admitted his involvement in the burglary and gave a written statement which also implicated Jared Lipford. (Tr. 33).
A complaint was filed on November 28, 2000, charging appellant with second degree felony burglary in violation of R.C. 2911.12(A)(2)[1] and two thefts in violation of R.C. 2913.02(A)(1), a fourth degree felony for the stolen rifle and a fifth degree felony for the value of the other stolen items; all offenses were also in violation R.C. 2151.02(A), corresponding to juveniles. The two theft charges were merged. The case was tried to the court on February 9, 2001.
Mrs. Shaw testified about the stolen items, identified her bracelet that was recovered from Casey Coleman, and noted that Jared Lipford was once friends with her grandson and had been swimming at her house three or four times. (Tr. 48-49). Leroy Coleman testified that he and Jared Lipford were both suspended from school on Wednesday, November 1, 2000. (Tr. 2). He said Jared called him around 8:00 a.m. When Leroy Coleman arrived at Jared's house, Jared allegedly asked him if he wanted to go steal money from a house whose owners he knew. (Tr. 63).
Leroy Coleman testified that they entered the house between 10:30 and 11:00 a.m. through an unlocked garage window. (Tr. 65, 72). Leroy Coleman said that while Jared Lipford went upstairs, he unlocked the sliding glass door. (Tr. 66). He then related that he took a rifle that was in the living room and Jared came downstairs carrying a bag. (Tr. 67-68). According to Leroy Coleman's testimony, the two then went to Jared's house to sort the stolen goods, which he described as two rings, a few bracelets, a necklace, a tin of change, $70 cash, and a .22 rifle. (Tr. 68). They then allegedly went to Casey Coleman's house where Jared first met Casey. (Tr. 70).
After the state rested, the defense moved for acquittal on two grounds. First, counsel complained that Leroy Coleman's testimony is untruthful and that there exists nothing other than his testimony to connect appellant to the burglary. Second, counsel stated that the time of the burglary was not established because Leroy Coleman testified that it occurred in the morning, but Mrs. Shaw initially told police that it occurred between 7:30 and 9:30 p.m. The court disagreed and overruled the acquittal motion. (Tr. 85).
The defense presented the testimony of appellant's parents as evening alibi witnesses. Mrs. Lipford stated that on the day in question, appellant arrived home with Casey Coleman at 4:30 p.m. and was home all night. (Tr. 112). Mr. Lipford stated that he talked to appellant three times on the evening in question and displayed telephone records that demonstrated long distance phone calls made between appellant's house and Mr. Lipford's residence. (Tr. 93-98). Finally, appellant took the stand and recited his actions on the day of the burglary. He estimated that he woke up around 8:00 a.m., did chores on his farm for an hour, finished at 9:30 or 10:00 a.m., got picked up by his girlfriend, Casey Coleman, around 11:00 a.m., and cleaned her basement until they went to his house at 4:30 p.m. (Tr. 121-125, 133). Appellant testified that Leroy Coleman came to Casey Coleman's around 1:00 p.m. with a "wad of money," stating that he stole it from his aunt. (Tr. 126-127). Lastly, appellant specifically denied breaking into the Shaw residence. (Tr. 132).
The court found the charges in the complaint to be true and thus adjudicated appellant a delinquent child. On February 20, 2001, the court sentenced appellant to the Ohio Department of Youth Services, suspended the sentence, imposed probation and eighty hours of community service, and ordered appellant to pay his share of the restitution, a $250 fine and costs. Timely notice of appeal was filed.
 ASSIGNMENT OF ERROR NUMBER ONE
Appellant sets forth two assignments of error on appeal. The first assignment of error and its corresponding issue presented provide:
 "THE DECISION OF THE TRIAL COURT FINDING THE JUVENILE DELINQUENT IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."
 "Is the testimony of one witness, a `co-defendant' who admits to an offense and admits that he lied to law enforcement officers at least twice before, sufficient, without any corroborating evidence, to prove beyond a reasonable doubt the guilt of another he claims to be his minion?"
Although the issue presented suggests that an accomplice's testimony must be corroborated to constitute sufficient evidence of guilt, the argument is not specifically outlined or explained thereafter. Regardless, the rule requiring corroboration of an accomplice's testimony was repealed in 1986. The current version of R.C. 2923.03(D) merely requires that a cautionary instruction on accomplice testimony be given in a jury trial.
Under this assignment, appellant also makes weak arguments concerning a shoe print and the credibility of Leroy Coleman. The deputy who responded to the Shaw's call, found one shoe print in the mulch under the garage window. She attempted to measure it and recorded it in her report. The existence of the shoe print was raised by defense counsel in cross-examination of the deputy. The deputy testified that the print measured approximately twelve inches long by four inches wide. Counsel asked the deputy to measure appellant's foot; she did and stated that his shoe measured thirteen inches long by four inches wide. The deputy stated that a print would be larger not smaller if pressure was applied as the print was made. On redirect, the deputy opined that the print was not reliable evidence. During appellant's testimony, defense counsel asked appellant to take off his shoe and give it to the judge to show him the shoe size. The court stated, "I really don't care about the shoe. I don't think there's any evidence here that connects his shoe to the crime scene." Defense counsel said, "Okay. * * * You're not saying that that's an essential element of the state's case." The court responded in the negative, and defense counsel again said, "okay."
Now, appellate counsel is trying to say that the court should have considered the shoe evidence to rebut Leroy Coleman's testimony as evidence exculpating appellant. Appellant claims that the presence of a single footprint weighs heavily against the testimony that two people gained entry through the window, stating, "if the ground was soft for one, it was soft for the other." As the state counters, "[i]f the existence of only one (1) footprint at the scene is indicative of only one (1) person committing the offense, what happened to the person's other foot?" The court heard the testimony that the print found outside the garage window was smaller than that of the shoes appellant wore to trial. The court assured counsel that it did not consider the print as inculpating appellant. That the print did not belong to appellant does not exculpate him when the whole theory of the case is that appellantand Leroy Coleman entered through that window.
A judgment is not reversed as being against the manifest weight of the evidence unless the reviewing court determines that the fact-finder clearly lost its way and created a manifest miscarriage of justice. Statev. Thompkins (1997), 78 Ohio St.3d 380, 387. The trier of fact is in the best position to weigh the evidence and judge the credibility of the witnesses. State v. DeHass (1967), 10 Ohio St.3d 230, 231. When there exists conflicting testimony, it is the trier of fact who resolves the conflicts. Id.
In this case, the court viewed the gestures, demeanor, and voice inflections of appellant and Leroy Coleman. See Seasons Coal Co. v.Cleveland (1984), 10 Ohio St.3d 77, 80. The court chose to believe Leroy Coleman's version of events. He testified that he and Jared Lipford burglarized the home by entering through the garage window and exiting through the sliding glass door. He testified that Jared stated that he knew the homeowners and what was in their house. Mrs. Shaw testified that both the garage window and the sliding glass door were unlocked. She also disclosed that Jared Lipford had been at her house three to four times with her grandson. Leroy Coleman testified that Jared Lipford met Casey Coleman that day and started dating her immediately. Appellant admitted that Casey was his girlfriend and that he saw Casey on the date of the burglary. The lieutenant testified that Casey Coleman was wearing the stolen bracelet when he went to interview her. The evidence is such that a fact-finder would not have lost its way by finding appellant delinquent. The fact that Leroy Coleman initially denied that he and Jared Lipford committed the burglary does not make his later admissions incredible. Also, the fact that Leroy Coleman's written statement diminishes the role he played in the burglary, compared to his trial testimony which admitted that he played a greater role, does not make his testimony incredible.
For these reasons, the trial court's decision would not be against the manifest weight of the evidence and this assignment of error would be overruled if appellant had been properly identified as the perpetrator.[2] However, that remaining issue, as set forth in the second assignment of error, is ultimately dispositive of this appeal.
 ASSIGNMENT OF ERROR NUMBER TWO
Appellant's second assignment of error and issue presented provide as follows:
 "THE EVIDENCE PRESENTED BY THE STATE IS LEGALLY INSUFFICIENT TO SUPPORT A CONVICTION OF THE ALLEGED OFFENSES, AND THEREFORE LEGALLY INSUFFICIENT TO SUPPORT A FINDING THAT THE JUVENILE WAS DELINQUENT."
 "In juvenile proceedings, must the State identify a person, i.e. by courtroom identification, in order to support a finding of delinquency?"
Where evidence is insufficient, a conviction must be reversed and the case cannot be retried. Thompkins, 78 Ohio St.3d at 387. Whether or not the state's evidence is sufficient is a question of law dealing with adequacy. Id. at 386. The court is to view the evidence in the light most favorable to the prosecution and determine whether any rational trier of fact could find that the essential elements have been proven beyond a reasonable doubt. State v. Goff (1998), 82 Ohio St.3d 123, 138. Besides proving that a burglary and a theft of a firearm occurred, the identification of appellant as the perpetrator must have been proven beyond a reasonable doubt. State v. Cook (1992), 65 Ohio St.3d 516, 526. Appellant disputes that the element of his identity as the perpetrator was proven beyond a reasonable doubt.
Prior to the hearing, the juvenile court ordered the record to reflect that Jared Lipford, his attorney and his parents were present in court. None of the witnesses for the state specifically identified appellant by pointing him out. The only evidence against appellant was Leroy Coleman's written statement and his testimony about the events of the day. Leroy Coleman did not state that the person in the courtroom was the person who burglarized the house with him. Although Leroy Coleman testified that "Jarod Lipford" committed the burglary with him, he was never asked to identify Jarod Lipford in the courtroom.
During the presentation of the defense, Mrs. Lipford identified appellant on direct examination as "Jarod, my son sitting next to you [defense counsel]." (Tr. 108). Yet, this just establishes what appellant's name is; it does not identify him as the person who burglarized the Shaw's house with Leroy Coleman. We also note that Leroy Coleman testified that the person who committed the offenses with him started dating Casey Coleman on the day of the burglary. Going towards identity, appellant later testified that he dates Casey Coleman and that she slept over his house on the night of the burglary. Yet, it is the state's burden to present sufficient evidence on identification; the state's error is not cured by defense testimony. See State v. Parks
(1990), 56 Ohio App.3d 8, 10 (stating that the presentation of evidence in one's own defense does not waive a sufficiency argument after unsuccessfully moving for acquittal).
We recognize that the Third Appellate District was presented with a similar case. State v. Craft (Oct. 12, 2000), Van Wert App. No. 15-2000-08, unreported. In that case, the juvenile appealed on the grounds that the state failed to identify him. The court disagreed and noted that prior to the hearing, the trial court stated on the record that the juvenile and his parents were present. Although the opinion does not specifically state that, it appears that the principal testified against the juvenile but was never asked to point at the juvenile to establish that this was the Craft of which they were speaking. The court focused on Juv.R. 27(A), which states that the juvenile court may conduct the hearing in an informal manner. That court affirmed the decision that found the juvenile to be an unruly child in violation of R.C. 2151.022(A).
We disagree with this holding. The elements involved in a juvenile adjudication for delinquency or unruliness must be proven beyond a reasonable doubt. Juv.R. 29(E)(4); R.C. 2151.35(A). The fact that Juv.R. 27(A) and R.C. 2151.35(A) mention that the hearing may be informal does not relieve the state of the burden to prove the identity of the juvenile beyond a reasonable doubt through the testimony of its witnesses. Additionally, the fact that the juvenile's name may be the same as that given by the state's witness as the offender does not establish identification.
Somewhat analogous are the cases dealing with prior offenses as enhancing the degree of the current crime. The state must prove the prior offense beyond a reasonable doubt. State v. Gordon (1971),28 Ohio St.2d 45, 48. A mere copy of a judgment entry on the conviction is not sufficient. R.C. 2945.75(B). The state must prove that the one named in the judgment entry is the same person named as the defendant in the case before the court. State v. Blonski (1997), 125 Ohio App.3d 103,109-110. The courts explain that the fact that the current defendant has the same name as the defendant in the judgment entry means little in and of itself. See, e.g., State v. O'Neil (1995), 107 Ohio App.3d 557, 560
(holding that "a name alone is not sufficient to establish identity," "[n]ames alone are not very reliable," and conviction requires "identity evidence, not merely name evidence").
The issue of identification remains until the state proves it beyond a reasonable doubt. State v. Simpson (Dec. 5, 1995), Franklin App. No. 95APA05-582, unreported, 2. When the prosecution assumes identity is not an issue, it is remiss in its duty. Id. If the prosecution does not prove identity, the defense can pursue a defense claiming lack of identification. Id.
Regardless of the preceding analysis, the state admits that a mistake was made in the identification of appellant. In the case at bar, the state's brief concedes, "the failure to ensure that the question ofidentification was included in the written transcript of the proceedingsbelow was undoubtedly a mistake by the assistant prosecutor * * *." (Emphasis added).
The state's only response to appellant's sufficiency argument revolves around waiver. The state contends that appellant waived the identification argument because he failed to raise it with the trial court in his motion for acquittal. The state also contends that although the state failed to ask that the record reflect it, the trial court observed nonverbal indications that when Leroy Coleman said, "Jarod Lipford," he was referring to appellant who was seated in front of him. The state thereby suggests that if appellant had raised the issue in the trial court, the court would have stated on the record that it observed these indications.
Admittedly, many errors are waived on appeal where the defense failed to file an objection below. See, e.g., State v. Hooks (2001),92 Ohio St.3d 83, 85. In such situations, the error is only reversible if it constitutes plain error under Crim.R. 52(B). Id. Under this general rule, some appellate decisions continue to hold that sufficiency issues are waived where an acquittal motion has not been filed or renewed, relying on authority such as State v. Roe (1989), 41 Ohio St.3d 18, which mentioned such waiver. See, also, City of Dayton v. Rogers (1979),60 Ohio St.2d 162, 163 (first setting forth that insufficiency is not waived by failing to renew a motion for acquittal with regards to bench trials but stating in dicta the rule which would later be Roe that acquittal motions must be filed in jury trials to preserve an insufficiency argument).
However, the Ohio Supreme Court has since held that a defendant does not waive a sufficiency argument on appeal where he fails to raise the issue at trial. State v. Jones (2001), 91 Ohio St.3d 335, 346; State v.Carter (1992), 64 Ohio St.3d 218, 223. The Court reasons that the defendant's "not guilty" plea preserves his right to object to the alleged insufficiency of the evidence. Id. Even if these recent cases did not exist, Rogers held there was no waiver in a bench trial, Roe was a jury trial, and appellant's case was a bench trial.
The non-waiver rule also applies where the defendant raises some grounds in a motion for acquittal but omits other grounds which he later raises on appeal. See Jones, 91 Ohio St.3d at 346 (holding no waiver where the defendant filed a motion for acquittal on prior calculation and design but raised on appeal this ground and the additional sufficiency argument that the state did not prove that he committed the killing in order to avoid apprehension). Accordingly, the state's waiver argument fails.
For the foregoing reasons, appellant's second assignment of error has merit and requires reversal of his delinquency adjudications. As such, appellant's adjudications are hereby reversed.
Donofrio, J., concurs.
DeGenaro, J., concurs.
[1] We note that this burglary subsection requires proof that the trespass (into the occupied structure characterized as a habitation) took place at a time when another person is present or likely to be present. R.C. 2911.12(A)(3), which is only a third degree felony, is the subsection to be used for trespass into the habitation when a person is not likely to be present. Relevant to these statutory distinctions, the victim testified that she and her husband both work in the day and that Jared Lipford knows her.
[2] See State v. Green (1991), 58 Ohio St.3d 239, 240-242 (where the appellate court found insufficient evidence and noted that the conviction was not otherwise against the weight of the evidence and where the Supreme Court reversed the appellate court's decision on sufficiency without having to remand to the appellate court due to its prior decision on weight).