KNAPP ET AL., APPELLANTS, *v.*
GURISH; CITY OF EUCLID, APPELLEE.

(No. 54548—Decided
January 3, 1989.)

*Thomas J. Escovar* and *William H. Rider,* for appellants.

*Mark B. Marein,* for appellee city of Euclid.

PATTON, P.J. Plaintiff-appellant Stephen R. Knapp, Executor of the Estate of Jim Knapp, appeals from a summary judgment rendered in favor of defendant-appellee city of Euclid. The underlying complaint alleged that decedent's death was proximately caused by Euclid police officers who negligently failed to detain decedent when it was apparent to them that he was intoxicated. Decedent died from injuries he sustained after being struck by a motorist while crossing Interstate 90 by foot.

The materials filed relative to the motion for summary judgment showed that on August 22, 1984, decedent had been drinking while celebrating his birthday. His friends stranded him in Euclid, a suburb some twenty miles from his home in Garfield Heights, as a prank. Two Euclid police officers saw decedent stumbling down a street. They stopped him and, after a lengthy discussion, drove him to the house of a friend who lived in Euclid. The officers waited until a light came on and decedent entered the enclosed porch area before leaving to continue their patrol.

At about 3:00 a.m., decedent appeared at the front desk of the police department and requested a ride home. The desk sergeant, noting that decedent was intoxicated, offered to telephone a taxicab. Decedent acknowledged that a taxicab ride would be the best course of action, but maintained he could place the call himself. He entered the lobby of the police station, out of sight of the sergeant, presumably to use the public telephone. Moments later, the desk sergeant checked the lobby, but the decedent had exited the police station. Shortly thereafter, Euclid police received a call reporting a pedestrian had been struck on the interstate. Decedent was dead at the scene.

Euclid filed its motion for summary judgment arguing that (1) no custodial situation existed at the Euclid police station, therefore no duty of care was owed decedent, and (2) assuming a duty of care existed, that duty was discharged reasonably. The court granted summary judgment, concluding that no custodial relationship existed between decedent and Euclid and that Euclid was under no duty to act. Appellant's two assign-

58

ments of error complain about these conclusions.

Appellant first argues that Euclid had a duty to arrest and detain decedent once its police officers determined that decedent was intoxicated. In support of this argument, appellant cites R.C. 2917.11(B)(2), a provision of the Criminal Code prohibiting a voluntarily intoxicated person from engaging in conduct or creating a condition which presents a risk of physical harm to himself or another, or to the property of another. Appellant argues that the failure to arrest decedent for such disorderly conduct was a breach of the police officers' duty. This argument fails for two reasons.

First, the duty to arrest a person for disorderly conduct while intoxicated is necessarily discretionary. R.C. 2917.11(B)(2) requires that a police officer assess the condition of the intoxicated person and determine whether his condition poses a risk of harm to himself or others. This assessment requires an exercise of professional judgment that is essential to the proper implementation of the statute. Assuming no willful abuse or malicious exercise of discretion occurred, a holding to the contrary would impugn the proper exercise of discretion and impose liability in hindsight. Such a result would place an undue restriction on the police power of the state. The uncontradicted evidence established that decedent was intoxicated, but was coherent and cordial and not unruly, disorderly or incapable of caring for himself. On these facts, there is no evidentiary basis for finding that a question of fact exists as to the improper exercise of discretion.

Second, assuming a duty to detain decedent existed, that duty was owed to the public, not decedent. A municipality's duty to provide police protection is ordinarily one owed to the public at large and not to any particular individual or class of individuals. *Sawicki* v. *Ottawa Hills* (1988), 37 Ohio St. 3d 222, 231, 525 N.E. 2d 468, 478, citing *Cuffy* v. *City of New York* (1987), 69 N.Y. 2d 255, 513 N.Y. Supp. 2d 372, 505 N.E. 2d 937. Moreover, appellant has failed to demonstrate that Euclid established a special duty or relationship with decedent. *Sawicki, supra,* at paragraph four of the syllabus. There is no evidence to suggest that Euclid had assumed, by promises or actions, to undertake an affirmative duty to act on behalf of decedent. The uncontroverted facts show that decedent had two contacts with the police department. His first contact resulted in two police officers transporting decedent to a friend's home and departing after he safely entered the house. Any special relationship terminated once decedent safely entered the house. The second contact occurred at the Euclid Police Station. The facts demonstrate that decedent refused assistance in telephoning a taxicab, preferring to place the telephone call himself. By rejecting the offered assistance, decedent foreclosed any action that might have resulted in an affirmative duty to act on his behalf.

Appellant also argues that a custodial situation existed, thus giving rise to a special relationship between decedent and the police. A law enforcement officer having custody of an arrestee or prisoner stands in a special relationship to that person, toward whom he owes a duty of reasonable care and protection. *Clemets* v. *Heston* (1985), 20 Ohio App. 3d 132, 135-136, 20 OBR 166, 168, 485 N.E. 2d 287, 291 (citing Restatement of the Law 2d, Torts [1965], Section 314A[4]). Once the custodial relationship begins, the duty continues until terminated at that point when the person in custody is free to leave. *Id.*

It is apparent from the facts that no breach of duty occurred while decedent was in custody. Arguably, dece-

dent was in custody with the two patrol officers who drove him to a friend's house. However, any relationship between decedent and the police was terminated once decedent safely entered his friend's house. Turning to decedent's appearance at the Euclid Police Station, there are no facts that indicate decedent was in custody at that time. Decedent was always free to leave and did so after refusing the desk sergeant's offer of help. There is simply no factual basis upon which we can conclude a custodial relationship existed.

Finally, we perceive no basis for liability under broader negligence principles. There is no duty to prevent that which is not foreseeable. *Menifee* v. *Ohio Welding Products, Inc.* (1984), 15 Ohio St. 3d 75, 77, 15 OBR 179, 180-181, 472 N.E. 2d 707, 710. No circumstances forewarned the desk sergeant that decedent would leave the police station lobby to traverse an interstate highway. Having had no knowledge or reason to anticipate decedent's departure, Euclid cannot be said to have owed a duty to protect against that possibility. *Jenkins* v. *Krieger* (1981), 67 Ohio St. 2d 314, 319, 21 O.O. 3d 198, 200, 423 N.E. 2d 856, 860. As a matter of law, no negligence was established. Accordingly, we overrule the assigned errors and affirm the judgment below.

*Judgment affirmed.*

KRUPANSKY and DYKE, JJ., concur.