OPINION
{¶ 1} Defendant-Appellant, Amanda L. Olson, appeals the judgment of the Defiance County Municipal Court convicting her of disorderly conduct and ordering her to pay a fine. On appeal, Olson asserts that the trial court erred by overruling her Crim.R. 29 motion for acquittal and that the verdict was against the manifest weight of the evidence. Based on the following, we affirm the judgment of the trial court.
 {¶ 2} In January 2007, Olson was arrested and charged with disorderly conduct while intoxicated in violation of Defiance City Ordinance 509.03(b)(2), a misdemeanor of the fourth degree, following an incident whereby a police officer observed Olson falling down outside of a bar while voluntarily intoxicated. Subsequently, Olson entered a plea of not guilty to the charge.
 {¶ 3} In March 2007, the case proceeded to a bench trial, during which the following testimony was presented.
 {¶ 4} Patrolman Drew Waltmire of the Defiance Police Department testified that, on the night of the incident, he was in a marked patrol car in a parking lot about 100-150 yards away from the entrance to Eppi's, a local bar; that, as he was watching the entrance to the bar shortly before 2:00 a.m., he observed Olson and a female friend, Christina Ludwig, exit the bar and stand on the sidewalk near the bar; that Ludwig was holding Olson up, but Olson separated *Page 3 
herself from Ludwig and fell to the ground on the sidewalk; that he and another officer approached the women and observed that Olson was intoxicated; that, while he was talking to Olson, she was unsteady on her feet, kept telling Ludwig to leave her alone, and fell to the ground again; that neither he nor Ludwig was able to catch Olson; that he determined Olson was at risk of causing physical harm to herself and arrested her; and, that, as he was walking Olson to his vehicle, she began to fall again, but he caught her.
 {¶ 5} On cross-examination, Patrolman Waltmire admitted that Olson and Ludwig said they were waiting for a ride home and had no intention of either driving or walking home; that their ride arrived while he was talking to them, but the driver remained in the vehicle and just flashed the headlights; and, that, after processing Olson's arrest, he released her to her brother.
 {¶ 6} Ludwig testified that, when she and Olson decided to leave the bar, they arranged for the mother of their male friend, Adam, to pick them up; that, when they left the bar to wait for their ride, Olson stood against the building and slid down it; that she was helping Olson up when the police arrived; that Olson did not have any trouble standing; that Olson was wearing three to four-inch stiletto heels; and, that she was talking with another officer and did not observe Olson fall again. *Page 4 
 {¶ 7} On cross-examination, Ludwig testified that she and Olson had consumed between four and six beers within two and a half hours on the night of the incident; that the combination of the alcohol and the stilettos may have made it difficult for Olson to walk; that the ground may also have been slick that evening; that Olson did not want Ludwig to help when Olson was talking to the police; that Adam arrived at the bar before she and Olson and had been drinking longer than them; and, that Olson may have been acting "goofy," but she was not acting intoxicated. (Trial Tr., p. 17).
 {¶ 8} At the close of both the City's evidence and her own, Olson moved for a Crim.R. 29 judgment of acquittal, which the trial court overruled. Thereafter, the trial court found that Olson was not guilty of a fourth degree misdemeanor disorderly conduct violation,[1] but that she was guilty of a minor misdemeanor disorderly conduct violation because she presented a risk of physical harm to herself. The trial court ordered Olson to pay a $150 fine and court costs. In doing so, the trial court also hypothesized that Olson was in such a condition that she could have fallen on the sidewalk, hit her head, been left in a vegetative state, and then sued the city because its officers failed to protect her after observing her prior falls. The trial court also took judicial notice that the bar was "exactly on the *Page 5 
corner of an intersection. It's on a sidewalk that abuts the street, and where they were going, it's only a couple steps out [sic] the sidewalk before you're at the curb and in harms [sic] way." (Trial Tr., p. 23).
 {¶ 9} It is from this judgment that Olson appeals, presenting the following assignments of error for our review.
 Assignment of Error No. I THE COURT ERRED IN OVERRULING APPELLANT'S RULE 29 MOTION FOR ACQUITTAL.
 Assignment of Error No. II THE COURT'S VERDICT IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
 Assignment of Error No. I {¶ 10} In her first assignment of error, Olson asserts that the trial court erred by overruling her Crim.R. 29 motions for judgment of acquittal. Specifically, Olson contends that the City did not present sufficient evidence to show that she engaged in conduct or created a condition that presented a risk of physical harm. We disagree.
 {¶ 11} Under Crim.R. 29(A), a court shall not order an entry of judgment of acquittal if the evidence is such that reasonable minds can reach different conclusions as to whether each material element of a crime has been proven *Page 6 
beyond a reasonable doubt. State v. Bridgeman (1978), 55 Ohio St.2d 261. A motion for acquittal tests the sufficiency of the evidence. State v.Miley (1996), 114 Ohio App.3d 738, 742.
 {¶ 12} When an appellate court reviews a record for sufficiency, the relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. State v. Monroe, 105 Ohio St.3d 384, 392, 2005-Ohio-2282, citingState v. Jenks (1991), 61 Ohio St.3d 259, superseded by state constitutional amendment on other grounds as stated in State v.Smith, 80 Ohio St.3d 89, 1997-Ohio-355. Sufficiency is a test of adequacy, State v. Thompkins, 78 Ohio St.3d 380, 386, 1997-Ohio-52, and the question of whether evidence is sufficient to sustain a verdict is one of law. State v. Robinson (1955), 162 Ohio St. 486, superseded by state constitutional amendment on other grounds as stated inSmith, supra.
 {¶ 13} Olson was charged with violating Defiance City Ordinance 509.03(b)(2), which is identical to R.C. 2917.11(B)(2), and provides: "[n]o person, while voluntarily intoxicated shall do either of the following: * * * [e]ngage in conduct or create a condition which presents a risk of physical harm to the offender or another, or to the property of another." Olson does not contest the fact that she was voluntarily intoxicated. Instead, she challenges the notion that she *Page 7 
engaged in conduct or created a condition that presented a risk of physical harm to herself by standing outside the bar while waiting for the designated driver to arrive.
 {¶ 14} "Risk" is defined as "* * * a significant possibility, as contrasted with a remote possibility, that a certain result may occur or that certain circumstances exist." R.C. 2901.01(A)(7). The Committee Comments to Am. Sub. H.B. No. 511, which enacted R.C. 2917.11, explains the scope of R.C. 2917.11(B)(2):
 Former law merely prohibited being found in a state of intoxication, whereas this section is aimed at particular conduct rather than at the condition. Thus, it is not a violation of this section for a person to get drunk and pass out in his own home, provided he doesn't unreasonably offend others or pose a danger to himself or another person. It is a violation if he imbibes too much and, while in public or with others, becomes offensively noisy, coarse, or aggressive, or becomes uncontrollably nauseated between the entrée and dessert. It is also a violation if, when alone and drunk or under the influence of drugs, he attempts a tightrope act on a bridge parapet or curls up to sleep in a doorway in freezing weather.
Clearly, the law does not focus on the intoxicated state of the accused, but rather upon his or her actions while intoxicated. City of Lorain v.Wright (1983), 11 Ohio App.3d 200, 202. The offender must engage in some affirmative behavior, as intoxication alone is not enough under R.C.2917.11(B)(2). State v. Graves, 173 Ohio App.3d 526, 2007-Ohio-4904, at ¶ 21, citing State v. Jenkins (1998), 6th Dist. No. L-97-1303,1998 WL 161190, and State v. Parks (1990), *Page 8 56 Ohio App.3d 8, 10-11. Thus, "once intoxicated, [the accused] must use whatever care he possesses to act safely." Wright,11 Ohio App.3d at 202. Additionally, "the duty to arrest a person for disorderly conduct while intoxicated is necessarily discretionary." Knapp v. Gurish (1989),44 Ohio App.3d 57, paragraph one of the syllabus. A police officer "must assess the condition of the intoxicated person and determine whether his condition poses a risk of harm to himself or others. This assessment requires an exercise of professional judgment that is essential to the proper implementation of [R.C. 2917.11(B)(2)]." Id.
 {¶ 15} Here, Olson argues that her conduct of merely standing outside the bar waiting for her ride is similar to those cases finding no risk of physical harm for purposes of a disorderly conduct violation. See, e.g., Wright, supra (act of sleeping inside inoperable vehicle is insufficient); Parks, supra (act of sitting in passenger seat of parked vehicle where driver has been arrested and vehicle is to be towed is insufficient); McCurdy v. Montgomery Cty., Ohio (C.A. 6 2001),240 F.3d 512 (act of verbally challenging a police officer's authority to order the accused into his own home is insufficient); State v. Pennington
(1998), 5th Dist. No. 1998CA00137, 1998 WL 818632 (act of running through a bad neighborhood at 2:30 a.m. is insufficient).
 {¶ 16} However, we disagree with Olson's characterization of her conduct because a review of the evidence indicates that she was not merely standing and *Page 9 
waiting. Instead, she was falling down multiple times and refusing assistance. Additionally, Olson's assertion that, if she is guilty of disorderly conduct based upon these facts, then any intoxicated person who is merely standing, or sitting on a bar stool, could be guilty of disorderly conduct because of the risk of falling goes too far and distorts the trial court's findings. The trial court did not find Olson guilty of disorderly conduct because she could have fallen, it found her guilty because she did fall and also refused assistance to prevent her from falling.[2] While such conduct may not be as extreme as the examples given in the Committee Comment to R.C. 2917.11(B)(2), the risk of physical harm is also not as remote as that in the cases relied upon by Olson. To find that repeatedly falling down on the sidewalk only creates a remote possibility of physical injury is illogical and we decline to do so. Whether Olson was actually harmed from the falls is irrelevant, as R.C. 2917.11(B)(2) contains no such requirement.
 {¶ 17} Moreover, Olson's assertion that the trial court's decision diminishes the incentive to arrange for a designated driver, and punishes her for doing so, also goes too far. We commend Olson and her friends for acknowledging that they should not drive or walk home and for calling a designated driver. However, we again emphasize that Olson was not arrested and convicted for simply waiting *Page 10 
outside the bar or being intoxicated — it was because she failed to do so in a safe manner. Olson fell down two times and nearly a third time, refused to let others assist her, and, consequently, was arrested for her own safety. Conversely, as the trial court noted, Olson's friends, who had also been drinking and decided they should not drive, were not falling down and were not arrested. Thus, after reviewing the evidence in a light most favorable to the prosecution, we find that the evidence was sufficient for a rational trier of fact to have found beyond a reasonable doubt that Olson was guilty of disorderly conduct.
 {¶ 18} Accordingly, we overrule Olson's first assignment of error.
 Assignment of Error No. II {¶ 19} In her second assignment of error, Olson asserts that the trial court's verdict was against the manifest weight of the evidence. We disagree.
 {¶ 20} When an appellate court analyzes a conviction under the manifest weight standard it must review the entire record, weigh all of the evidence and all of the reasonable inferences, consider the credibility of the witnesses, and determine whether in resolving conflicts in the evidence, the fact finder clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. Thompkins, 78 Ohio St.3d at 387, quoting State v. Martin (1983), 20 Ohio App.3d 172, 175. Only in exceptional *Page 11 
cases, where the evidence "weighs heavily against the conviction," should an appellate court overturn the trial court's judgment. Id.
 {¶ 21} Olson was charged with a violation of Defiance City Ordinance 509.03(b)(2), which is identical to R.C. 2917.11(B)(2), and provides: "[n]o person, while voluntarily intoxicated, shall do either of the following: * * * [e]ngage in conduct or create a condition that presents a risk of physical harm to the offender or another, or to the property of another."
 {¶ 22} Here, the evidence indicated that Olson fell down two times; that she refused assistance from Ludwig; that she would have fallen a third time but for Patrolman Waltmire catching her; and, that no one from the designated driver's vehicle got out to assist her. Patrolman Waltmire testified that he believed Olson was unable to care for herself and presented a risk of physical harm to herself. Although Ludwig testified that Olson was simply being "goofy" and had difficulty standing because of her stilettos, the weight to be given to the evidence and the credibility of witnesses are primarily reserved for the trier of fact. State v. DeHass (1967), 10 Ohio St.2d 230, paragraph one of the syllabus. The trial court chose to believe Patrolman Waltmire's testimony over Ludwig's. We cannot say that in weighing all of the evidence that "the fact finder clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a *Page 12 
new trial ordered." Thompkins, 78 Ohio St.3d at 387. Thus, we find that Olson's conviction was not against the manifest weight of the evidence.
 {¶ 23} Accordingly, we overrule Olson's second assignment of error.
 {¶ 24} Having found no error prejudicial to the appellant herein, in the particulars assigned and argued, we affirm the judgment of the trial court.
Judgment affirmed.
 PRESTON and WILLAMOWSKI, J., concur.
[1] To constitute a fourth degree misdemeanor, the disorderly conduct must have been committed "in the presence of any law enforcement officer * * * who is engaged in the person's duties at the scene of a fire, accident, disaster, riot, or emergency of any kind." Defiance City Ordinance 503(e)(3)(C); see, also, R.C. 2917.11(E)(3)(c). The trial court found that the police officers were not engaged in an emergency when the incident occurred.
[2] We note that the trial court further suggested that, if Olson had been injured during one of her falls, she could have ended up in a vegetative state and sued the City for failing to protect her. Although such a supposition was too speculative, it was superfluous to the legitimate finding that falling down presented a risk of physical harm to Olson. *Page 1