The STATE of Ohio, Appellee,

v.

SILKAUSKAS, Appellant.

[Cite as *State v. Silkauskas*, 184 Ohio App.3d 652, 2009-Ohio-5749.]

Court of Appeals of Ohio,
Second District, Montgomery County.

No. 23135.

Decided Oct. 30, 2009.

James F. Long, City of Kettering Prosecuting Attorney, for appellee.

Marcy J. Herman, for appellant.

WOLFF, Judge.

{¶ 1} This case is before the court on the appeal of Todd Silkauskas from a trial court's verdict finding him guilty of disorderly conduct under Section 648.04(b)(2) of the Codified Ordinances of the City of Kettering, Ohio. Silkauskas contends that the evidence is insufficient to prove that he engaged in the affirmative behavior needed under the ordinance to find him guilty. We agree.

### I

{¶ 2} In May 2008, Silkauskas drove to the apartment of Wilson Lyons, a friend, to play video games and drink beer. Because he knew that he would be drinking a good number of beers, Silkauskas planned on spending the night there, which he had done before. Sometime after he arrived, Silkauskas and Lyons had an argument, and Lyons told Silkauskas to leave, saying that he would call the police if Silkauskas did not. Silkauskas responded that Lyons could go right ahead and call, because he believed that the police would drive him home, which they had done in the past. When the police arrived, Lyons had a change of heart and told Silkauskas to hide in the kitchen, saying that he would tell the officers that Silkauskas had just left. Silkauskas hid, but the officers did not believe Lyons's story. The officers looked around the apartment and found Silkauskas hiding in the kitchen. They also saw a good number of beer cans strewn about and smelled the contents of the cans emanating from both Silkauskas and Lyons.

{¶ 3} When Officer Warner asked Silkauskas how much he had had to drink, he admitted to at least six to eight beers. Silkauskas said that he was in no shape to drive home. Contrary to Silkauskas's belief, Officer Warner did not offer to drive him home. She did offer to drop him off at another house in Kettering or just outside the city. Silkauskas made two phone calls in an attempt to find someone to help him, but his efforts were in vain. Officer Warner then asked whether anyone could come pick him up. Silkauskas said there was no one except a taxi or his parents. He had no money for a taxi, and he refused to call his parents. The only way for Silkauskas to get to his Centerville home

was on foot, but Officer Warner would not permit him to walk home because she was concerned for Silkauskas's safety. With Lyons back to saying he wanted him out, and Silkauskas unable to find a way home, Officer Warner decided to arrest him. Silkauskas spent the night in jail and was released the next morning.

{¶ 4} Silkauskas was charged with disorderly conduct under Section 648.04(b)(2) of the Codified Ordinances of the City of Kettering. On October 29, 2008, his case was tried to a judge in the Kettering Municipal Court. After the prosecutor had presented the city's case, Silkauskas asked the court for a judgment of acquittal under Crim.R. 29(A), arguing that the prosecutor had failed to introduce evidence that Silkauskas had done anything wrong. The court overruled the request, found Silkauskas guilty, sentenced him to 30 days in jail (29 days suspended and credit of one day for time served), and imposed a $200 fine plus court costs.

{¶ 5} Silkauskas appealed, and his appeal is now before us.

## II

### First Assignment of Error

The trial court erred in overruling appellant's motion for acquittal pursuant to Crim.R. 29.

### Second Assignment of Error

The finding against appellant is against the manifest weight of the evidence.

{¶ 6} Crim.R. 29(A) directs a trial court to enter a judgment of acquittal on a charged offense for which "the evidence is insufficient to sustain a conviction." Crim.R. 29(A). When the issue is sufficiency of the evidence, the relevant "inquiry is, after viewing the evidence in the light most favorable to the prosecution, whether any reasonable trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks* (1991), 61 Ohio St.3d 259, 273, 574 N.E.2d 492. Sufficiency is a question of law. *State v. Thompkins* (1997), 78 Ohio St.3d 380, 386, 678 N.E.2d 541. We review questions of law de novo.

{¶ 7} Silkauskas first contends that the prosecutor's evidentiary offering was not sufficient to prove that he committed the offense of disorderly conduct. The ordinance says:

{¶ 8} " * * *

{¶ 9} "(b) No person, while voluntarily intoxicated shall do either of the following:

{¶ 10} " * * *

{¶ 11} "(2) Engage in conduct or create a condition which presents a risk of physical harm to himself or another, or to the property of another." Section 648.04(b)(2) of the Codified Ordinances of the City of Kettering.

{¶ 12} Silkauskas, conceding that he was voluntarily intoxicated, contends that the state failed to present evidence that he did anything that presented a risk of harm.

{¶ 13} While there are no cases construing this ordinance, there are cases construing the Revised Code's disorderly-conduct statute, found in R.C. 2917.11(B)(2) ("No person, while voluntarily intoxicated, shall do either of the following: * * * Engage in conduct or create a condition that presents a risk of physical harm to the offender or another, or to the property of another"), which courts have looked to when construing the disorderly-conduct ordinances of other cities. See, e.g., *State v. Jenkins* (Mar. 31, 1998), Lucas App. No. L–97–1303, 1998 WL 161190 (saying that a city of Toledo disorderly-conduct ordinance was similar). Like those courts, we turn for guidance to the cases construing the state statute.

{¶ 14} The statutory comments by the Legislative Service Commission emphasize that R.C. 2917.11(B)(2) " 'is aimed at particular conduct rather than at the condition.' " See *State v. Pennington* (Nov. 16, 1998), Stark App. No. 1998CA00137, 1998 WL 818632 (quoting the comments). Courts agree that to violate this section, "[t]he offender must engage in some affirmative behavior." *Defiance v. Olson,* Defiance App. No. 4–07–12, 2008-Ohio-735, 2008 WL 483438, at ¶ 14, citing *State v. Graves,* 173 Ohio App.3d 526, 2007-Ohio-4904, 879 N.E.2d 239, at ¶ 21 ("Clearly, the law does not focus on the intoxicated state of the accused, but rather upon his or her actions while intoxicated"); see also *Jenkins* and *McCurdy v. Montgomery Cty., Ohio* (C.A.6, 2001), 240 F.3d 512, 517 (applying Ohio law). As one court pointed out, the statute "requires both that an individual is 'voluntarily intoxicated' *and* that the individual 'present[ ] a risk of physical harm' either to himself, another, or another's property." *McCurdy* at 517. "This second element," continued the court, "requires some affirmative showing of dangerousness, as the sole fact that an individual is intoxicated does not give rise to a § 2917.11(B)(2) infraction." Id., citing *Pennington* and *Jenkins.* For example, say the statutory comments, "It is [ ] a violation if, when alone and drunk or under the influence of drugs, [defendant] attempts a tight rope on a bridge parapet or curls to sleep in a doorway in freezing weather." See *Pennington* (quoting the Legislative Service Commission comments). Additional case law, too, shows that the accused must do something that is dangerous after becoming intoxicated. For example, we said that "[b]y being behind the wheel of an operable car, [the defendant] created a condition in which there was a significant risk that he would awaken, or be awakened by some external event,

while still intoxicated, and drive the car, perhaps not even mindful of being in an intoxicated state." *State v. Tillman* (Sept. 30, 1993), Montgomery App. No. 14060, 1993 WL 385821, at *3; see also *State v. Dickens* (April 9, 1999), Montgomery App. No. 17336, 1999 WL 197936, at *3 ("[the defendant's] conduct in taking a loaded semi-automatic handgun, cocking it, and pressing it up against Frost's head in a bedroom where an infant was present, while [the defendant] was intoxicated, is clearly sufficient to create a significant possibility, i.e. a risk, of physical harm") and *Defiance* (standing outside while intoxicated and falling down multiple times while refusing assistance is sufficient to be found guilty of disorderly conduct). But sitting in the passenger seat of a parked vehicle while intoxicated, when the driver has been arrested and the vehicle is to be towed, is insufficient to prove a violation. *State v. Parks* (1990), 56 Ohio App.3d 8, 564 N.E.2d 747. Similarly, sleeping inside an inoperable vehicle while intoxicated is insufficient to sustain a conviction. *Lorain v. Wright* (1983), 11 Ohio App.3d 200, 11 O.B.R. 296, 463 N.E.2d 1298. Finally, a prosecutor presented "no allegation of affirmative conduct that put appellant at risk of harm" when the evidence showed only that while intoxicated, the appellant stood on the sidewalk in front of an apartment building. *Graves* at ¶ 24; see also *Pennington* (concluding that the act of running through a bad neighborhood in the early morning is insufficient behavior to sustain a conviction). Like in *Graves*, here the prosecutor failed to present evidence of dangerous affirmative conduct.

{¶ 15} The trial court, from the bench, made findings of fact that form the basis of its guilty verdict. With respect to the element of voluntary intoxication, the court found that Silkauskas had drunk six to eight beers. With respect to the physical-harm element, the court said to Silkauskas, "There is no testimony that you presented a risk of harm to others. There is testimony that the Court considers to be sufficient that you would have presented a risk of harm to yourself." The conduct or condition that presented this risk of harm, said the court, "would be in the walking aspect, in other words, walking from that residence to your residence in Centerville, Ohio. If you had operated a motor vehicle, that would have presented a risk of harm to yourself and others. That's based on your own testimony that you're in no condition to operate a vehicle from your own assessment." Then the court made this comment: "[T]his is not a situation, not that I would have found it to be a defense, but this is not a situation that came upon you without any prior forewarning. By your own testimony, these disagreements with Mr. Lyons have occurred in the past to the point that you were asked to leave." None of the court's findings, though, is of dangerous, affirmative behavior that Silkauskas engaged in after he became voluntarily intoxicated.

{¶ 16} Here, in brief, is the sequence of events: Silkauskas drove to Lyons's apartment—sober—where he was welcomed inside; the two played video games and drank beer; for reasons unclear, Lyons was angered by Silkauskas and told him to leave; Lyons called the police; by the time the police knocked on his door, Lyons had changed his mind and told Silkauskas to hide in the kitchen; discovered by the police and told he must leave, Silkauskas tried to find someone who would pick him up or to whose home the police could bring him; unable to find anyone, forbidden to drive, forbidden to walk, Silkauskas was arrested. The key question is: What affirmative behavior did Silkauskas engage in "while voluntarily intoxicated" that presented a risk of physical harm to himself or created a condition that presented a risk of physical harm to himself? As the case law shows, the answer cannot be simply becoming intoxicated in Lyons's apartment. The answer cannot be driving or walking home because he did neither. The court's final statement suggests that Silkauskas violated the statute by going to Lyons's apartment and becoming intoxicated when he knew that Lyons might tell him to leave. But the evidence shows that Silkauskas drove to Lyons's apartment sober, not beginning to drink until after he arrived. If being intoxicated is insufficient to violate the statute, what did Silkauskas do while intoxicated that was dangerous? The evidence fails to answer this question.

{¶ 17} Because it fails to provide an answer, no reasonable factfinder could find this essential element of the offense proved beyond a reasonable doubt. Consequently, the prosecutor's evidence was not sufficient as a matter of law, so the trial court should have granted Silkauskas's Crim.R. 29(A) motion and entered a judgment of acquittal.

{¶ 18} The first assignment of error is sustained.

{¶ 19} Because the evidence is not sufficient, the question posed by the second assignment of error (whether the verdict is contrary to the weight of the evidence) is moot.

### III

{¶ 20} Having sustained the first assignment of error, we reverse the judgment of the trial court.

*Judgment reversed.*

FAIN and FROELICH, JJ., concur.

WILLIAM H. WOLFF JR., J., retired, of the Second District Court of Appeals, sitting by assignment.