**[Cite as *State v. Bradfield*, 2023-Ohio-3389.]**

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Appellee | : | C.A. No. 29701 |
| | : | |
| v. | : | Trial Court Case No. 22-CRB-2633 |
| | : | |
| LEWIS D. BRADFIELD | : | (Criminal Appeal from Municipal Court) |
| | : | |
| Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on September 22, 2023

. . . . . . . . . . .

KAILA L. MCCLELLAN, Attorney for Appellant

BRIAN B. GRAVUNDER, Attorney for Appellee

. . . . . . . . . . . .

EPLEY, J.

{¶ 1} Defendant-Appellant Lewis D. Bradfield appeals from his conviction in the Dayton Municipal Court after he was found guilty of one count of disorderly conduct, a fourth-degree misdemeanor. For the reasons that follow, the judgment of the trial court will be vacated.

## I.     Facts and Procedural History

{¶ 2} On the evening of July 21, 2022, Kyle Hess was walking to his class in Building Three at Sinclair Community College when he noticed Bradfield lying in a fetal position against the wall just inside the building. Hess approached Bradfield to check on his well-being and tried unsuccessfully to wake him. Sinclair Police were called. Susan Hicks, another Sinclair student, soon arrived to help. She and Hess pulled Bradfield away from the wall, positioned him on his back, and performed a sternum rub; that maneuver ultimately woke Bradfield.

{¶ 3} Once awake, Bradfield struggled to get his bearings. Hess testified that he "seemed very out of it and confused," and Hicks smelled alcohol all over Bradfield. Once he was able to talk, Bradfield told Hicks that he had a medical condition that caused him to pass out and some "sugar issues." Hicks testified that Bradfield did not seem "that drunk," but that she thought he was "intoxicated."

{¶ 4} When Sinclair Officers Joseph Lang and Joshua Rogers arrived at the scene, Bradfield was sitting on the floor, being attended to by Hess and Hicks. Both officers spoke with Bradfield, smelled alcohol, and considered him to be intoxicated. Officer Lang performed the horizontal gaze nystagmus (HGN) test (a standard field sobriety test used by law enforcement) on Bradfield and determined that his eyes were unable to track smoothly and were involuntarily jerky, known signs of impairment. After determining that Bradfield was indeed intoxicated and that he worked as a janitorial contractor at Sinclair, Officer Lang notified Bradfield's supervisor, who came and walked him out of the building.

{¶ 5} On August 9, 2022, Bradfield was charged by criminal complaint with

disorderly conduct in violation of R.C. 2917.11(B)(2), a fourth-degree misdemeanor. The case proceeded to a bench trial at which the court heard testimony from Hess and Hicks, as well as Officers Rogers and Lang. Bradfield did not testify. The court also considered the officers' body camera footage. Ultimately, Bradfield was found guilty as charged. The trial court reasoned that he had violated the statute by "being voluntarily intoxicated, passing out and being difficult to revive, initially unable to stand and refusing medical assistance." Decision and Entry. The court imposed a $25 fine and court costs.

{¶ 6} Bradfield's timely appeal raises two assignments of error that we will consider together.

## II.      Sufficiency and Manifest Weight of the Evidence

{¶ 7} In his first and second assignments of error, Bradfield asserts that his conviction was not based on sufficient evidence and that it was against the manifest weight of the evidence. We agree.

{¶ 8} "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt." *State v. Marshall*, 2010-Ohio-5160, 946 N.E.2d 762, ¶ 52 (2d Dist.), quoting *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus. "The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *Id.* A conviction based on legally insufficient evidence constitutes a denial of due process and will bar a

retrial. *State v. Thompkins,* 78 Ohio St.3d 380, 386-387, 678 N.E.2d 541 (1997).

{¶ 9} When an appellate court reviews whether a conviction is against the manifest weight of the evidence, "[t]he court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of the witnesses and determines whether in resolving conflicts in the evidence, the [trier of fact] clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *Id.* at 387, quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983). A case should not be reversed as being against the manifest weight of the evidence except " 'in the exceptional case in which the evidence weighs heavily against the conviction.' " *Id.*

{¶ 10} As to the underlying charge of disorderly conduct, R.C. 2917.11(B)(2) states that no person, while voluntarily intoxicated, shall engage in conduct or create a condition that presents a risk of physical harm to the offender or another, or to the property of another. It is not enough that the defendant is intoxicated; he or she must engage in some affirmative behavior. *State v. Silkauskas*, 2009-Ohio-5749, 921 N.E.2d 1134, ¶ 14 (2d Dist.). "[T]he law does not focus on the intoxicated state of the accused, but rather upon his or her actions while intoxicated." *Defiance v. Olson*, 3d Dist. Defiance No. 23135, 2008-Ohio-735, ¶ 14. The second element "requires some affirmative showing of dangerousness, as the sole fact that an individual is intoxicated does not give rise to a[n] * * * infraction." *McCurdy v. Montgomery Cty.*, 240 F.3d 512, 517 (6th Cir.2001) (applying Ohio law).

{¶ 11} There is little doubt in this case that Bradfield was intoxicated. Hicks, one of

the students who came to Bradfield's aid, testified that she smelled alcohol all over him. Both officers testified that they suspected Bradfield of being under the influence of drugs or alcohol, and both stated that he smelled of alcohol. Officer Lang told the court that "[Bradfield] wasn't processing questions right and kind of delayed on answering questions. He was losing attention very easily." Trial Tr. at 44. "It was pretty easy to tell that he was under the influence of something." Trial Tr. at 45. Officer Rogers testified that he thought Bradfield was under the influence of drugs or alcohol because he was found unconscious on the floor, he had bloodshot eyes, his "speech seemed a little bit off," and he was not responding to questions. Additionally, when given the HGN test by Officer Lang, Bradfield's eyes were unable to track smoothly and were involuntarily jerky, known signs of impairment. There was sufficient evidence in the record to conclude that Bradfield had been intoxicated.

{¶ 12} For a conviction of disorderly conduct pursuant to R.C. 2917.11(B)(2), however, the State must prove that the defendant engaged in conduct or created a condition that presented a risk of physical harm to the offender or another, or to the property of another; in other words, it must make some affirmative showing of dangerousness. We do not have that in this case. Hicks testified that as she was walking to class, she first saw Bradfield "just laying up against the wall talking on his phone." Trial Tr. at 16. A short time later, she noticed that he was lying on his side with his head against the wall. Likewise, when Hess happened upon Bradfield, he was laying in the fetal position against the wall. When officers arrived, Bradfield was *still* sitting against the wall, this time with Hess and Hicks attending to him.

{¶ 13} The record contains no evidence that Bradfield was belligerent or violent to the bystanders or officers when they came to his aid, no indication that he tripped any passersby while he was lying on the floor (the body camera footage showed that no one was in the hall while officers were there), and no testimony that he caused harm to himself by, for example, hitting his head as he fell (there is no evidence that he fell). Finally, the record demonstrates that the whole situation came to a peaceful end when Bradfield was simply escorted out of the building by his supervisor. *Compare State v. Tillman,* 2d Dist. Montgomery No. 14060, 1993 WL 385821 (Sept. 30, 1993) (defendant was passed out behind the wheel of an operable car); *State v. Dickens*, 2d Dist. Montgomery No. 17336, 1999 WL 197936 (Apr. 9, 1999) (defendant pressed a cocked and loaded semi-automatic handgun against another's head in a bedroom with an infant present); *State v. Pennington*, 5th Dist. Stark No. 1998CA00137, 1998 WL 818632, *1 (Nov. 16, 1998) ("It is also a violation if, when alone and drunk or under the influence of drugs, he [defendant] attempts a tight rope on a bridge parapet or curls to sleep in a doorway in freezing weather.").

{¶ 14} The State failed to present any evidence that Bradfield engaged in affirmative dangerous conduct while intoxicated. In fact, there was no evidence that he engaged in *any* conduct at all; he was simply passed out against the wall in an empty hallway. Accordingly, we must conclude that his conviction was not based on sufficient evidence as the State failed to prove all the elements of the crime. It follows, then, that Bradfield's conviction was also against the weight of the evidence. *State v. Short*, 2d Dist. Montgomery No. 27192, 2017-Ohio-7200, ¶ 22 ("Where there is insufficient evidence to

support a conviction, it will also necessarily be against the manifest weight of the evidence."). Both assignments of error are sustained.

### III.  Conclusion

**{¶ 15}** The judgment of the trial court will be vacated.

. . . . . . . . . . . . .


TUCKER, J. and HUFFMAN, J., concur.