[Cite as *State v. Stone*, 2023-Ohio-3842.]

# IN THE COURT OF APPEALS OF OHIO
## ELEVENTH APPELLATE DISTRICT
## PORTAGE COUNTY

| | |
|---|---|
| STATE OF OHIO,<br>CITY OF RAVENNA, | CASE NOS. 2023-P-0018<br>2023-P-0019 |
| Plaintiff-Appellee, | Criminal Appeals from the<br>Municipal Court, Ravenna Division |
| - vs - | |
| NICHOLAS W. STONE, | Trial Court Nos. 2022 CRB 02696 R<br>2022 CRB 02695 R |
| Defendant-Appellant. | |

# **O P I N I O N**

Decided: October 23, 2023
Judgment: Affirmed in part and reversed in part

*Victor V. Vigluicci,* Portage County Prosecutor, and *Pamela J. Holder,* Assistant Prosecutor, 241 South Chestnut Street, Ravenna, OH 44266 (For Plaintiff-Appellee).

*Cecily J. Mullins*, Megargel, Eskridge & Mullins, LLP, 231 South Chestnut Street, Ravenna, OH 44266 (For Defendant-Appellant).

JOHN J. EKLUND, P.J.

{¶1} Appellant, Nicholas Stone, appeals his convictions of Disorderly Conduct through Intoxication, a minor misdemeanor in violation of R.C. 2917.11(B)(2) in Case No. 2022 CRB 02695, and Disorderly Conduct, a fourth-degree felony in violation of R.C. 2917.11(A) in Case No. 2022 CRB 02696. Appellant specifically asserts that his convictions were against the manifest weight of the evidence and that the state failed to present sufficient evidence to support his convictions. For the following reasons, the judgments of the Ravenna Municipal Court are affirmed in part and reversed in part.

{¶2} This appeal concerns two separate cases stemming from incidents occurring on October 6, 2022.

**{¶3} Case No. 2022 CRB 02695: Disorderly Conduct through Intoxication –**

{¶4} Patrolman Adam Mohler testified for the state that on October 6, 2022, Kevin Garlitz and a friend were walking by a parking lot behind a Huntington Bank in Ravenna, Ohio. They saw Appellant behaving abnormally, became "worried," and called the police. Patrolman Mohler arrived at the scene. At trial, he described the interaction:

> I found [Appellant]. He was -- you know, he appeared obviously impaired. He was leaning up against a van. There was spit on the window of the van. He was swaying back and forth. He couldn't even speak to me to where he was or what was going on or what he had taken. He just kept spitting on the ground, and at some point he told me he thought he was in Cuyahoga Falls, and we ended up calling him a squad because he was unable to care for himself and obviously had something was going on with him.

{¶5} Patrolman Mohler called for an ambulance and it transported Appellant to UH Portage Medical Center. The police issued Appellant a citation for Disorderly Conduct through Intoxication.

**{¶6} Case No. 2022 CRB 02696: Disorderly Conduct –**

{¶7} Patrolman James Novak testified for the state that on October 6, 2022, he was patrolling the emergency department at UH Portage Medical Center when an ambulance transported Appellant there. Patrolman Novak described Appellant's actions at the hospital:

> He wasn't doing anything abrupt at that time, just was not acting quite right. When officers went back to the office and around the ED area, a panic alarm went off in the cat scan area. * * * I was the first one to respond. There was staff all around the Defendant holding him down as he was yelling and screaming. * * * The staff member said that he was kicking, was not cooperative and was spitting at them while he was cursing. * * * {Appellant] didn't want to cooperate, called all of

2

Case Nos. 2023-P-0018, 2023-P-0019

us, including me while he was saying it, and I quote, "faggot ass bitches" and "to go fuck ourselves." * * * From there this officer had to help assist hold him down until we got him over into the other bed where some straps were put on. What I know is that he, the doctor, said that his thinking wasn't quite there and that when he was brought in he wasn't as alert as he was in the CT, and he wasn't making sound decisions, but there was something medically going on with him that they had to scan him. It was a life or death situation.

{¶8} The state asked Patrolman Novak if Appellant "had awareness to what was happening around him?" Patrolman Novak replied: "At the CT Department, yes, he was making eye contact. * * * CT scan he was completely with it when we took him back over to the other room after the CT was complete. Shortly thereafter he went right back to sleep." The police issued Appellant a citation for Disorderly Conduct.

{¶9} On October 12, 2022, the Ravenna Municipal Court arraigned Appellant on Case Nos. 2022 CRB 02695 and 2022 CRB 02696. Appellant pled not guilty on all counts. On March 16, 2023, the court held a bench trial in both cases and found Appellant guilty of committing Disorderly Conduct through Intoxication, a minor misdemeanor in violation of R.C. 2917.11(B)(2) in Case No. 2022 CRB 02695, and Disorderly Conduct, a fourth-degree felony in violation of R.C. 2917.11(A) in Case No. 2022 CRB 02696.

{¶10} Appellant timely appeals and raises two assignments of error. We consider both assignments together.

{¶11} First assignment of error: "The trial court erred in convicting Appellant of Disorderly Conduct and Disorderly Conduct by Intoxication as the record does not contain sufficient evidence of each element of those offenses."

{¶12} Second assignment of error: "Appellant's convictions are against the manifest weight of the evidence."

3

Case Nos. 2023-P-0018, 2023-P-0019

{¶13} "'Sufficiency' is a term of art meaning that legal standard which is applied to determine whether the case may go to the [factfinder] or whether the evidence is legally sufficient to support the [factfinder's] verdict as a matter of law." *State v. Thompkins*, 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997), citing Black's Law Dictionary (6 Ed.1990) 1433. The appellate court's standard of review for sufficiency of evidence is to determine, after viewing the evidence in a light most favorable to the prosecution, whether a rational trier of fact could find the essential elements of the crime proven beyond a reasonable doubt. *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus.

{¶14} When evaluating the sufficiency of the evidence, we do not consider its credibility or effect in inducing belief. *Thompkins* at 387. Rather, we decide whether, if believed, the evidence can sustain the verdict as a matter of law. *Id.* This naturally entails a review of the elements of the charged offense and a review of the state's evidence. *State v. Richardson*, 150 Ohio St.3d 554, 2016-Ohio-8448, 84 N.E.3d 993, ¶ 13.

{¶15} When evaluating the weight of the evidence, we review whether the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other indicated clearly that the party having the burden of proof was entitled to a verdict in its favor, if, on weighing the evidence in their minds, the greater amount of credible evidence sustained the issue which is to be established before them. "Weight is not a question of mathematics but depends on its effect in inducing belief." *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997). Whereas sufficiency relates to the evidence's adequacy, weight of the evidence relates the evidence's persuasiveness. *Id.*

4

{¶16} The trier of fact is the sole judge of the weight of the evidence and the credibility of the witnesses. *State v. Landingham*, 11th Dist. Lake No. 2020-L-103, 2021-Ohio-4258, ¶ 22, quoting *State v. Antill*, 176 Ohio St. 61, 67, 197 N.E.2d 548 (1964). The trier of fact may believe or disbelieve any witness in whole or in part, considering the demeanor of the witness and the manner in which a witness testifies, the interest, if any, of the outcome of the case and the connection with the prosecution or the defendant. *Id.*, quoting *Antil* at 67. This court, engaging in the limited weighing of the evidence introduced at trial, is deferential to the weight and factual findings made by the factfinder. *State v. Brown*, 11th Dist. Trumbull No. 2002-T-0077, 2003-Ohio-7183, ¶ 52, citing *Thompkins* at 390 and *State v. DeHass,* 10 Ohio St.2d 230, 227 N.E.2d 212 (1967), paragraph two of the syllabus. The reviewing court "determines whether * * * the [factfinder] clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." *State v. Martin*, 20 Ohio App. 3d 172, 175, 485 N.E.2d 717 (1st Dist. 1983).

{¶17} A finding that a judgment is supported by the manifest weight of the evidence necessarily means the judgment is supported by sufficient evidence. *State v. Arcaro*, 11th Dist. Ashtabula No. 2012-A-0028, 2013-Ohio-1842, ¶ 32.

{¶18} We first address whether the state presented sufficient evidence to convict Appellant of committing Disorderly Conduct through Intoxication, in violation of R.C. 2917.11(B)(2).

{¶19} R.C. 2917.11(B)(2) provides: No person, while voluntarily intoxicated, shall * * * [e]ngage in conduct or create a condition that presents a risk of physical harm to the

5

offender or another, or to the property of another." "Risk" is statutorily defined as "a significant possibility as contrasted with a remote possibility, that a certain result may occur or that certain circumstances exist." R.C. 2901.01(A)(7).

{¶20} "The law focuses, not on the drunken state of the accused but rather upon his conduct while drunk." *State v. Pennington*, 5th Dist. No. 1998CA00137, 1998 WL 818632, (Nov. 16, 1998). "The offender must engage in some affirmative behavior, as intoxication alone is not enough under R.C. 2917.11(B)(2)." *State v. Graves*, 173 Ohio App.3d 526, 2007-Ohio-4904, 879 N.E.2d 239, ¶ 21 (6th Dist.), citing *State v. Jenkins*, 6th Dist. No. L-97-1303, 1998 WL 161190 (Mar. 31, 1998), and *State v. Parks*, 56 Ohio App.3d 8, 10-11, 564 N.E.2d 747 (2d Dist. 1990). "The statute therefore requires both that an individual is 'voluntarily intoxicated' and that the individual 'present a risk of physical harm' either to himself, another, or another's property." *State v. Silkauskas*, 184 Ohio App. 3d 652, 2009-Ohio-5749, 921 N.E.2d 1134 (2d Dist.), ¶ 14 citing *McCurdy v. Montgomery Cty.*, Ohio, 240 F.3d 512, 517 (6th Cir., 2001). "Once intoxicated, [the accused] must use whatever care he possesses to act safely." *City of Lorain v. Wright*, 11 Ohio App.3d 200, 202, 463 N.E.2d 1298 (9th Dist.1983).

{¶21} In *Defiance v. Olson*, 3d Dist. No. 4–07–12, 2008-Ohio-735, the Third District Court of Appeals affirmed the defendant's conviction of Disorderly Conduct through Intoxication after the police witnessed the defendant falling down on the street as she was waiting for a ride home. The defendant asserted her conduct of standing outside the bar waiting for her ride posed no risk of physical harm. The appellate court disagreed, finding that "[t]he trial court did not find [the defendant] guilty of disorderly conduct because she could have fallen, it found her guilty because she did fall and also refused

6

assistance to prevent her from falling. * * * To find that repeatedly falling down on the sidewalk only creates a remote possibility of physical injury is illogical and we decline to do so."

{¶22} In *Graves*, *supra*, the police charged the defendant with Disorderly Conduct because he was intoxicated and standing on a sidewalk at 2:30 a.m. outside of an informant's apartment, in "chilly" weather. The Sixth District Court of Appeals reversed the defendant's conviction because "there was no evidence that [the defendant] was nearly asleep. Further, there was nothing of record to suggest that the temperature could put [the defendant] at risk of harm. Any harm to appellant was merely a remote possibility and not within the meaning of R.C. 2917.11(B)(2)." *Id.* at ¶ 24.

{¶23} In *Pennington*, *supra*, the police responded at approximately 2:30 a.m. to a "trouble call" that involved the defendant pounding on a door, refusing to leave. When the police arrived, they saw the defendant knocking on the door and called for him to come speak with them, but the defendant ran toward the rear of the house. The officers caught up to him, and arrested him. The defendant smelled of alcohol, staggered, and had slurred speech and glassy eyes. The officers charged him with Disorderly Conduct through Intoxication. The state contended that the basis for the defendant's arrest was his "running through a bad neighborhood at 2:30 in the morning, thereby causing a risk of harm to himself." The Fifth District Court of Appeals held: "We note [the state] offered no additional evidence as to how [the defendant] was placing himself at risk by running, other than he was running in a bad neighborhood [at 2:30 a.m.]. We find such evidence is legally insufficient to sustain a conviction under the subsection of R.C. 2917.11 charged in the case sub judice." *Id.* at * 2.

7

{¶24} In *State v. Parks*, 56 Ohio App.3d 8, 564 N.E.2d 747 (2d Dist. 1990), the police were involved in a high-speed chase. The officers found the object vehicle parked in a driveway with the defendant sitting in the passenger's seat and a companion sitting in the driver's seat. The defendant appeared "extremely" incoherent, had a strong odor of alcoholic beverage on his person, red bloodshot eyes, and "appeared very intoxicated." The police charged him with Disorderly Conduct through Intoxication. The Second District Court of Appeals held that the defendant's "act of sitting in the passenger seat of a parked car, albeit in an intoxicated state, [did not] creat[e] the kind of risk of physical harm to himself that is intended to be encompassed by R.C. 2917.11(B)(2)." *Id.* at 11.

{¶25} In this case, there is no evidence that Appellant engaged in conduct that presented a risk of physical harm to himself or anyone else. The state asserts that the patrolman's seeking medical help for Appellant, along with his conduct, is sufficient to show that he presented a risk of physical harm to himself. The evidence, Patrolman Mohler's testimony, demonstrated only that Appellant may have been intoxicated – he was leaning against a van, swaying back and forth, spitting on the ground, and was unaware of where he was. There is no evidence that Appellant engaged in affirmative behavior demonstrating that he presented a risk of physical harm to himself or another. We decline to hold that swaying against a van constitutes affirmative conduct creating a condition that presents a risk of physical harm to an offender or anyone else. There was merely a remote possibility, if any possibility, of potential harm.

{¶26} Nor was there evidence to support a finding that Appellant engaged in conduct that presented a risk of harm to the property of another person. Not even the state argues that Appellant's conduct or a condition he created presented such a risk.

8

Case Nos. 2023-P-0018, 2023-P-0019

Patrolman Mohler observed spit on the van's window, and Appellant spitting on the ground. One may assert that the spit on the van was sufficient evidence from which to infer (1) that Appellant had spat on the van, (2) thus presenting a risk of physical harm to the property of another. This argument fails for two reasons. The state did not present any evidence as to who owned the van. Nor did the state present any evidence that the spit on the van presented a risk of physical harm to the property. The spit demonstrates no more harm than a small bug hitting a windshield while driving on the highway.

{¶27} We also note that there was very little evidence presented to demonstrate that Appellant was intoxicated. Patrolman Mohler testified that he believed Appellant was "potentially intoxicated" because "[h]e was swaying back and forth. He was unaware of his surroundings, where he was. His pupils were very constricted. He just kept spitting on the ground. He spit on the van. He was just completely out of it, and not his normal state." However, there is also evidence that shortly after this encounter, Appellant had a medical condition at the hospital which could explain his altered state when meeting with Patrolman Mohler. There was no evidence that Appellant smelled of alcohol, had slurred speech, or that there was any alcohol near Appellant at any time.

{¶28} The state presented insufficient evidence to convict Appellant of committing Disorderly Conduct through Intoxication in violation of R.C. 2917.11(B)(2) in Case No. 2022 CRB 02695. Appellant's conviction is hereby reversed.

{¶29} We next address whether Appellant's conviction of Disorderly Conduct, in violation of R.C. 2917.11(A), was against the manifest weight of the evidence.

{¶30} R.C. 2917.11(A) provides:

> (A) No person shall recklessly cause inconvenience, annoyance, or alarm to another by doing any of the following:

9

Case Nos. 2023-P-0018, 2023-P-0019

(1) Engaging in fighting, in threatening harm to persons or property, or in violent or turbulent behavior;

(2) Making unreasonable noise or an offensively coarse utterance, gesture, or display or communicating unwarranted and grossly abusive language to any person;

(3) Insulting, taunting, or challenging another, under circumstances in which that conduct is likely to provoke a violent response;

(4) Hindering or preventing the movement of persons on a public street, road, highway, or right-of-way, or to, from, within, or upon public or private property, so as to interfere with the rights of others, and by any act that serves no lawful and reasonable purpose of the offender;

(5) Creating a condition that is physically offensive to persons or that presents a risk of physical harm to persons or property, by any act that serves no lawful and reasonable purpose of the offender.

{¶31} R.C. 2901.22(C) provides: "A person acts recklessly when, with heedless indifference to the consequences, the person disregards a substantial and unjustifiable risk that the person's conduct is likely to cause a certain result or is likely to be of a certain nature."

{¶32} Here, the greater weight of the credible evidence presented at trial supports Appellant's conviction under, at least, R.C. 2917.11(A)(2). Patrolman Novak's testimony shows that Appellant acted recklessly with heedless indifference when he was screaming offensive, abusive, and insulting language at the medical personnel, while kicking and spitting at them, causing personnel to push the panic alarm, restrain him, and hold him down. The testimony also reflects that Appellant was aware of his conduct at that time. To support his testimony that Appellant was aware of his actions, Patrolman Novak testified that he is qualified and trained by the state of Ohio to determine whether someone is mentally impaired. Notwithstanding Appellant's medical condition at the time, the evidence supports the conclusion that, at least when he was at the CT scan area, Appellant acted recklessly causing inconvenience, annoyance, or alarm. Patrolman

10

Novak did testify that the doctor "said that [Appellant's] thinking wasn't quite there * * * and he wasn't making sound decisions." Yet, according to Patrolman Novak's testimony, the doctor also said that when Appellant was "brought in, he wasn't as alert as he was in the CT." The trier of fact was free to believe and weigh the evidence presented and to determine its credibility.

{¶33} Appellant offers *State v. Dickey*, 75 Ohio App.3d 628, 600 N.E.2d 365 (11th Dist. 1991) to support his argument that his use of profanity, alone, was insufficient to support his conviction. He also contends that there was no testimony that he recklessly caused anyone inconvenience, annoyance, or alarm. "In interpreting R.C. 2917.11(A)(2), the courts of this state have held that the mere use of profane language in the presence of a police officer is not sufficient to constitute disorderly conduct." *Id.* at 631. *Dickey* is distinguishable from the instant case. Here, Appellant acted more than using profanity in front of Patrolman Novak; he also screamed abusive language at the medical personnel, kicked and spit at them, causing them to push the panic alarm for help. The facts here demonstrate that Appellant did more than direct profanity at Patrolman Novak.

{¶34} We have also considered the possibility Appellant was, in the CT scan area, simply expressing a constitutionally protected right to refuse treatment there. But, we find no facts in the record to support that proposition and Appellant has not asserted it.

{¶35} Reviewing the weight of the evidence, we cannot find that the factfinder clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.

11

{¶36} The court's finding of guilt under R.C. 2917.11(A) was not against the manifest weight of the evidence. That necessarily means the state presented sufficient evidence to convict Appellant on that count. *Arcaro,* 2013-Ohio-1842 at ¶ 32.

{¶37} Appellant's conviction of committing Disorderly Conduct in violation of R.C. 2917.11(A) is affirmed in Case No. 2022 CRB 02696.

{¶38} The judgment of the Ravenna Municipal Court is affirmed in Case No. 2022 CRB 02696. Appellant's conviction of Disorderly Conduct through Intoxication in violation of R.C. 2917.11(B)(2) in Case No. 2022 CRB 02695 is hereby reversed.

MATT LYNCH, J., concurs,

MARY JANE TRAPP, J., concurs in part and dissents in part with a Dissenting Opinion.

———————————————————————

MARY JANE TRAPP, J., concurs in part and dissents in part with a Dissenting Opinion.

{¶39} While I, too, find the state failed to present sufficient evidence to support Mr. Stone's conviction for disorderly conduct by intoxication, I also find the state failed to present sufficient evidence to convict Mr. Stone of disorderly conduct for the incident at the hospital because the state did not offer sufficient evidence of reckless intent.

{¶40} The majority asserts there was sufficient evidence to support Mr. Stone's conviction under R.C. 2917.11(A)(2), which provides, "No person shall *recklessly* cause inconvenience, annoyance, or alarm to another by * * * [m]aking unreasonable noise or

an offensively coarse utterance, gesture, or display or communicating unwarranted and grossly abusive language to any person[.]"  (Emphasis added.)

{¶41} "A person acts recklessly when, with heedless indifference to the consequences, the person disregards a *substantial* and *unjustifiable* risk that the person's conduct is likely to cause a certain result or is likely to be of a certain nature.  A person is reckless with respect to circumstances when, with heedless indifference to the consequences, the person disregards a *substantial* and *unjustifiable* risk that such circumstances are likely to exist."  (Emphasis added.)  R.C. 2901.22(C).

{¶42}  In other words, "'[a] defendant acts recklessly according to R.C. 2901.22(C) when he is *aware* that there is a risk or chance that the prescribed result may occur, but he nevertheless *chooses* to engage in the act and runs the risk.'"  (Emphasis added.) *State v. Powell*, 11th Dist. Lake No. 97-L-130, 1998 WL 682348, *3 (Sept. 25, 1998), quoting *State v. Edwards*, 83 Ohio App.3d 357, 361, 614 N.E.2d 1123 (10th Dist.1992); *see also* Katz, Martin & Macke*, Baldwin's Ohio Practice Criminal Law*, Section 108:6 (3d Ed.2022) ("The offender must be *aware* of facts which give rise to the risk that the conduct specified in [R.C. 2917.11](A)(1) to (5) will likely cause inconvenience, annoyance, or alarm to another.")  (Emphasis added.)

{¶43}  "'Substantial risk' means a strong possibility, as contrasted with a remote or significant possibility, that a certain result may occur or certain circumstances may exist." R.C. 2901.01(A)(8).

{¶44}  Since there is no statutory definition of the term "unjustifiable," we look to its ordinary meaning, *State v. Allen*, 159 Ohio St.3d 75, 2019-Ohio-4757, 147 N.E.3d 618,

13

Case Nos. 2023-P-0018, 2023-P-0019

¶ 4, which is "not excusable or justifiable." *Merriam-Webster*, https://www.merriam-webster.com/dictionary/unjustifiable (accessed October 10, 2023).

**{¶45}** The majority asserts that "[t]he testimony also reflects that Appellant was aware of his conduct at that time [while in the CT room]." I find no such evidence in this record. The record reveals that Patrolman Novak, despite his training to assess a suspect's mental acuity, at best gave a lay opinion that Mr. Stone was aware of what he was doing because he made eye contact. Patients in an emergency department can make eye contact even if they are in extremis (at the point of death). Eye contact, without more, is insufficient evidence from which the trier of fact may infer intent, particularly given the fact Mr. Stone was in the hospital for a medical emergency.

**{¶46}** Patrolman Novak's opinion that Mr. Stone was "completely with it," even when viewed in a light most favorable to the state, is hardly sufficient evidence of a conscious intent that meets the definition of recklessness, particularly when the same witness introduced the excited utterances of the treating physician, who said Mr. Stone's "thinking was not quite there"; "he wasn't making sound decisions"; "there was something medically going on with him, that they had to scan him"; "It was a life or death situation"; "he had some sort of leak going on where he was losing blood"; and "his levels were going down."

**{¶47}** When asked whether the type of behavior he observed would typically "be caused by some sort of intoxication," Patrolman Novak responded, "in my opinion * * * based on my experience * * * he was not acting right due to some sort of altered state." Blood loss could explain why he was in an "altered state" and combative, and despite the state's efforts during its examination of the officer, no evidence was offered that Mr. Stone

14

had alcohol or drugs in his system. This evidence was readily available to the state since Mr. Stone had been admitted to an emergency department.

{¶48} We have already determined the first conviction cannot stand because there was no evidence of intoxication. Given the state's witness testified that Mr. Stone was in an altered state, and the treating physician said Mr. Stone "was not quite there" and "was not making sound decisions" because of a medical emergency described as "life or death," then how, without more, did the state offer sufficient evidence that Mr. Stone displayed a heedless indifference to the consequences and consciously disregarded a substantial and unjustifiable risk that his conduct was likely to cause a certain result or was likely to be of a certain nature? If this evidence from the state's own witness is believed, it cannot sustain a verdict as a matter of law.

{¶49} Thus, I would also reverse Mr. Stone's conviction for disorderly conduct.

Case Nos. 2023-P-0018, 2023-P-0019